# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |
|---|---|
| In re:<br>    **RICHARD OLCZAK**<br>    **KAREN OLCZAK**<br><br>          Debtors<br>_____<br><br>RICHARD OLCZAK<br>KAREN OLCZAK<br>8772 Fenton Court<br>Northfield, Ohio 44067<br><br>        Plaintiffs-Debtors<br>vs.<br><br>FIRST MORTGAGE HOLDER<br>NATIONSTAR MORTGAGE LLC<br>8950 Cypress Waters Boulevard<br>Coppell, TX 75019<br><br>    and<br><br>JPMORGAN CHASE BANK NA<br>ATTN: OFFICER FOR SERVICE<br>      OF PROCESS<br>OFFICE OF THE SECRETARY<br>270 PARK AVENUE, 38TH FLOOR<br>NEW YORK, NEW YORK 10017<br><br>    And | ) ADVERSARY CASE NO.<br>) Chapter 13 Case No. **14-52779**<br>)<br>)<br>) **JUDGE ALAN M. KOSCHIK**<br>)<br>)<br>)<br>)**COMPLAINT TO DETERMINE**<br>) **SECURED VALUE AND AVOID**<br>)**WHOLLY UNSECURED MORTGAGE**<br>)**LIENS**<br>)**(JP MORGAN CHASE BANK NA**<br>)**HOME EQUITY LINE OF CREDIT**<br>)**AND**<br>)**GREEN TREE SERVICING LLC**<br>)**HOME EQUITY LINE OF CREDIT)**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

GREEN TREE SERVICING LLC )
F.K.A. BANK OF AMERICA, NA )
345 St. Peters Street )
St. Paul, MN 55102 )
)
Defendants-Creditors )

Now comes Plaintiff-Debtors RICHARD OLCZAK and KAREN OLCZAK, by

counsel and for his Complaint against Defendant JP MORGAN CHASE BANK, NA and

Defendant GREEN TREE SERVICING LLC, and states and avers as follows:

1. Plaintiffs are adults residing at 8772 Fenton Ct, Sagamore Hills, OH, 44067.

2. Plaintiffs filed a Bankruptcy proceeding under Chapter 13 of Title 11 of the

United States Code (hereafter "Bankruptcy Code") on October 21, 2014.

3. Defendant FIRST MORTGAGE HOLDER is a FDIC lending institution with

its principle office located in Coppell, Texas.

4. Defendant SECOND MORTGAGE HOLDER (Home Equity Line of Credit) is

a FDIC lending institution with its principle office located in New York, New York.

5. Defendant THIRD MORTGAGE HOLDER (Home Equity Line of Credit) is a

FDIC lending institution with its principle office located in St. Paul, Minnesota.

6. This action is properly commenced as an adversary proceeding pursuant to

Fed. R. Bankr. Proc. 7001.

7. This adversary proceeding relates to an arises in the Chapter 13 case of the

Plaintiff's bearing case No. 14-52759, which is currently pending in the United States

Bankruptcy Court for the Northern District of Ohio, Eastern Division.

8. This Court has subject matter jurisdiction over this adversary proceeding

pursuant to 28 U.S.C. Sections 1334 and 157 and the General Order 2012-7 entered in

this District on April 4, 2012 and the claims set forth herein are core proceedings within the meaning of the United States Bankruptcy Code.

9. This Court has personal jurisdiction over Defendants pursuant to Fed. R. Bankr. 7004(f).

10. This District is the proper venue for this adversary proceeding pursuant to 28 U.S.C. Section 1409(a).

## COUNT I: AVOID MORTGAGE OF JP MORGAN CHASE BANK NA (SECOND MORTGAGE HOLDER)

11. The Debtors have a fee simple interest in real estate located at 8772 Fenton Court, Northfield, Ohio 44067.

12. Debtors believe that this property has a probable fair market value of less than $194,840.00.

13. The property is encumbered by a first mortgage to Nationstar Mortgage LLC in the approximate sum of $185,104.71. A copy of proof of the claim is attached hereto as **Exhibit A.**

14. The residence is further encumbered by a second mortgage to JP Morgan Chase Bank NA. The approximate balance owed to JP Morgan Chase Bank NA, is $28,230.59, pursuant to the proof of claim filed by Second Mortgage Holder. A copy of the proof of claim is attached hereto as **Exhibit B.**

15. The residence is further encumbered by a third mortgage to Green Tree Servicing LLC. The approximate balance owed to Green Tree Servicing is $18,656.85, pursuant to the proof of claim filed by Third Mortgage Holder. A copy of the proof of claim is attached hereto as **Exhibit C.**

16. Based on provisions of 11 U.S.C. Section 506(a) and the decision rendered by the Sixth Circuit Court of Appeals in In re Lane, 280 F. 3d 663 (6th Cir. 2002), because the fair market value of the residence ($194,840.00) renders little equity, if any, subject to the balance owed on the first mortgage to Nationstar Mortgage LLC. ($185,104.71) and the second mortgage home equity line of credit to JP Morgan Chase Bank NA and the third mortgage home equity line of credit to Green Tree Servicing LLC should be designated as unsecured claims.

15. Consequently, there is no equity in the herein referenced real property after applying the balance due to Nationstar Mortgage LLC and the Debtors' homestead exemption and so, JP Morgan Chase Bank NA and Green Tree Servicing LLC should not receive any distribution through Plaintiff's Chapter 13 Plan, as secured creditors.

WHEREFORE, Plaintiff prays that this Court enter its Order declaring and determining the mortgage lien held by JP Morgan Chase Bank NA and the mortgage lien held by Green Tree Servicing LLC and encumbering the Debtors' residence, are unsecured claims and cancel each of record upon successful completion of the plan pursuant to 11 U.S.C. Section 506 and further, declaring that JP Morgan Chase Bank, NA and Green Tree Servicing LLC receive a distribution through the Plan as unsecured creditors, and for other and further relief as is just and proper.

Submitted by,
/s/ Leslie A Weiss
Leslie A Weiss
Attorney for the Debtors
Ohio Reg. No. 0051857
198 East Aurora Road
Northfield, Ohio 44067
Phone 330-468-1056
Fax 330-468-1068
Email: halberglaw@netlink.net

B 10 (Official Form 10) (4/13)

| UNITED STATE BANKRTUPCY COURT <u>NORTHERN</u> DISTRICT OF <u>OHIO</u> | PROOF OF CLAIM |
|---|---|

| | |
|---|---|
| Name of Debtor Richard Olczak and Karen L. Olczak | Case Number: 14-52759 |

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Nationstar Mortgage LLC

**COURT USE ONLY**

Name and address where notices should be sent:

Nationstar Mortgage, LLC
Attn: Bankruptcy Department
PO Box 630267
Irving, TX  75063

Telephone number: 1-877-343-5602          email:

☐ Check this box if this claim amends a previously filed claim

**Court Claim Number:** _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above):

Nationstar Mortgage, LLC
Bankruptcy Department
350 Highland Drive
Lewisville, TX  75067

Telephone number: 1-877-343-5602          email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim.  Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**     $185,104.71

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitle to priority, complete item 5.

☒ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim.  Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Mortgage Note
      (see instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:** XXXXXX8908 | **3a. Debtor may have scheduled account as:** Richard Olczak and Karen L. Olczak (See instruction #3a) | **3b. Uniform Claim Identifier (optional):** _____ (See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☒ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe: 8772 Fenton Court, Northfield, OH 44067

**Value of Property:**

**Annual Interest Rate** 2% ☒ Fixed  or  ☐ Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**
                                              $27,881.28

**Basis for perfection:** Recorded Mortgage

**Amount of Secured Claim:** $185,104.71

**Amount of Unsecured Claim:** $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*), earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507(a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507(a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507(a)(___).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years t[...] ...enced on or after the date of adjustment.

**EXHIBIT**

**A**

**6. Credits.** The amount of all payments on this claim has been cre[...] ...proof of claim. (See instruction #6)

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. (See instruction #7, and the definition of "redacted".)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.  ☒ I am the creditor's authorized agent (Attach copy of power of attorney, if any.)  ☐ I am the trustee, or the debtor, or their authorized agent (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Chris E. Manolis (0076197)

Title: Attorney

Company Nationstar Mortgage LLC

Address and telephone number if different from notice address above:
Shapiro, Van Ess, Phillips & Barragate, LLP
4805 Montgomery Road
Suite 320
Norwood, OH 45212
(513) 396-8100          cmanolis@logs.com

Telephone number:          email:

/s / Chris E. Manolis          12/03/2014
(Signature)                   (Date)

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**"Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase order, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of right to seek a lift of the automatic stay and foreclose if necessary."**

# Mortgage Proof of Claim Attachment

If you filed a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3002.1

| | |
|---|---|
| Name of debtor: Karen L Olczak and Richard Olczak | Case Number: 14-52759 |
| Name of creditor: Nationstar Mortgage LLC | Last four digits of any number you use to identify the debtor's account: XXXXXX8908 |

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1. | Principal due | | | | | (1) | $165,561.78 |

| | | Interest rate | From mm/dd/yyy | To mm/dd/yyy | Amount | | |
|---|---|---|---|---|---|---|---|
| 2. | Interest Due | 2% | 08/01/2012 | 09/30/2014 | $7,364.85 | | |
| | | | Total interest due as of the petition date | | $7,364.85 | Copy total here ▶ (2) | + $7,364.85 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3. | Total principal and interest due | | | | | (3) | $172,926.63 |

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

| | Description | Dates incurred | | Amount |
|---|---|---|---|---|
| 1. | Late charges | | (1) | $0.00 |
| 2. | Non-sufficient funds (NSF) fees | | (2) | $0.00 |
| 3. | Attorney fees | | (3) | $0.00 |
| 4. | Filing fees and court costs | 5/30/14 | (4) | $176.00 |
| 5. | Advertisement costs | 8/28/14 | (5) | $40.00 |
| 6. | Sheriff/auctioneer fees | | (6) | $0.00 |
| 7. | Title costs | | (7) | $0.00 |
| 8. | Recording fees | | (8) | $0.00 |
| 9. | Appraisal/broker's price opinion fees | | (9) | $0.00 |
| 10. | Property inspection fees | 6/25/11, 10/21/11, 11/26/11, 12/19/11, 1/26/12, 2/25/11 | (10) | $90.00 |
| 11. | Tax advances (non-escrow) | | (11) | $0.00 |
| 12. | Insurance advances (non-escrow) | | (12) | $0.00 |
| 13. | Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3). | | (13) | $13,836.20 |
| 14. | Property Preservation expenses. Specify:" _____ | | (14) | $0.00 |
| 15. | Other. Specify: Posting Cost | 4/17/14 | (15) | $40.00 |
| 16. | Total prepetition fees, expenses, and charges. Add all of the amounts listed above. | | (16) | $14,182.20 |

## Part 3: Statement of Amount Necessary to Cure Default as of the Petition Date

Does the installment payment amount include an escrow deposit?

☐ No.

☒ Yes.  Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

| | | | | | |
|---|---|---|---|---|---|
| **1. Installment payments due** | Date last payment received by creditor | | 09/19/2014 | | |
| | Number of installment payments due | (1) | 26 | | |
| **2. Amount of installment payments due** | 26 installments @ $532.08 | + | $13,834.08 | | |
| | Total installment payments due as of the petition date | | $13,834.08 | Copy total here ▶ (2) | $13,834.08 |
| **3. Calculation of cure amount** | Add total prepetition fees, expenses, and charges | | | Copy total from Part 2 here ▶ + | $14,182.20 |
| | Subtract total of unapplied funds (funds received but not credited to account) | | | - | $135.00 |
| | Subtract amounts for which debtor is entitled to a refund | | | - | $0.00 |
| | Total amount necessary to cure default as of the petition date | | | (3) | $27,881.28 |

Copy total onto Item 4 of Proof of Claim form

# AUTHORIZATION TO RELEASE INFORMATION
## TO THE TRUSTEE REGARDING SECURED CLAIMS
### BEING PAID BY THE TRUSTEE

### SEND TO TRUSTEE ONLY
### DO NOT FILE WITH THE COURT

Debtor(s): <u>Richard Olczak and Karen L. Olczak</u>

Case No:: <u>14-52759</u>

The Debtor(s) authorize any and all lien holder(s) and insurers on real property of the bankruptcy estate to release information to the Chapter 13 Trustee in this bankruptcy filing.

The information to be released includes, but is not limited to, the amount of the post-petition monthly installment, annual interest rate, loan balance, escrow accounts, amount of the contractual late charge, and the mailing address for payments. Any information protected by the E-Government Act, such as Social Security numbers, shall not, however, be released.

This information will only be used by the Trustee and his/her staff in the administration of the bankruptcy estate and may be included in motions before the Court.

_____          _____
Debtor's Signature                        Date

_____          _____
Joint Debtor's Signature                  Date

# ADDENDUM TO CHAPTER 13 PROOF OF CLAIM
## FOR DEBT SECURED BY A MORTGAGE ON THE DEBTOR'S PRINCIPAL RESIDENCE TO BE PAID THROUGH CHAPTER 13 TRUSTEE

### ATTACH TO FILED PROOF OF CLAIM

Debtor(s): Richard Olczak and Karen L. Olczak          Case No: 14-52759

Last 4 digits of Loan No: XXXXXX8908

Current monthly payment amount: $991.18

| $532.08 | $0.00 | $0.00 | $467.10 |
|---|---|---|---|
| Principal & Interest | Taxes | Insurance | Other |

Explain each category of expense included in "Other": Escrow

---

**Description of Security for Debt**

Address:          8772 Fenton Court

City:             Northfield

State:            OH

County:           Summit

Permanent Parcel #

---

**Creditor Information**

Creditor entitled to enforce the note secured by the mortgage

    Name: Nationstar Mortgage LLC

    Contact (individual's name and position): Bankruptcy Department

    Tele No: 1-888-480-2432          Fax No: 972-315-8784

    Email:

Servicer acting on behalf of creditor

    Name: Nationstar Mortgage LLC

    Contact (individual's name and position): Bankruptcy Department

    Tele No: 1-888-480-2432          Fax No: 972-315-8784

    Email:

**Attorney**

☐ Servicer    Name: <u>Chris E. Manolis</u>

☒ Creditor    Address: <u>Shapiro, Van Ess, Phillips & Barragate, LLP, 4805 Montgomery Road, Suite</u>
<u>320, Norwood, OH 45212</u>

Tele No: <u>(216) 373-3109</u>      Fax No: <u>(847)627-8805</u>

Email: <u>cmanolis@logs.com</u>

| United States Bankruptcy Court Northern District of Ohio | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Richard Olczak Karen L. Olczak | Case Number: 14-52759 Judge Koschik |
|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
JPMorgan Chase Bank, N.A. successor by merger to Bank One

COURT USE ONLY

☐ Check this box if this claim amends a previously filed claim.

Name and address where notices should be sent:

Chase Records Center
Attn: Correspondence Mail
Mail Code LA4-5555
700 Kansas Lane
Monroe, LA 71203

Telephone number:    1-866-520-6447     email:

**Court Claim Number:**
*(If known)*

Filed on:

Name and address where payment should be sent (if different from above):

JPMorgan Chase Bank, N.A.
National Payment Services
P.O. Box 24785
Columbus, OH 43224-0785

Telephone number:    1-866-520-6447     email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. **Amount of Claim as of Date Case Filed: $28,230.59**

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☒ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim: Money Loaned
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: 8359 | 3a. Debtor may have scheduled account as: _____ (See instruction #3a) | 3b. Uniform Claim Identifier (optional): _____ (See instruction #3b) |
|---|---|---|

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☒ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe:
8772 FENTON COURT
SAGAMORE HILLS, OH 44067

Value of Property:

Annual Interest Rate 1.0% ☐ Fixed or ☒ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any

$ __ 3,782.35

Basis for perfection: Recorded Mortgage

Amount of Secured Claim: $28,230.59

Amount Unsecured:   $ ____ N/A



**EXHIBIT**

B

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of the claim falls into one of the following categories, check the box specifying the priority and state the amount

☐ Domestic support obligations Under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan -- 11 U.S.C. §507 (a)(5).

Amount entitled to priority

$ _____

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__)

*Amounts are subject to adjustment on 4-1-16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

7. Documents: Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. (See instruction #7, and the definition of "redacted".)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

8. Signature: (See instruction #8)

Check the appropriate box.

☐ I am the creditor. ☒ I am the creditor's authorized agent. ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.) ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief

Print Name: Joel K Jensen
Title: Case Attorney
Company: LERNER, SAMPSON & ROTHFUSS
Address and telephone number (if different from notice address above):
PO Box 5480
Cincinnati, OH 45201-5480

/s/ Joel K. Jensen
Joel K. Jensen
Bar Registration #0029302
(513) 241-3100 x-3349

_____          March 9, 2015
(Signature)                              (Date)

Telephone number: (513) 241-3100          email: nohbk@lslaw.com

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim.
See Bankruptcy Rule 3001 (c) (2).

| | |
|---|---|
| Name of debtor: Richard Olczak<br>Karen L. Olczak | Case Number: 14-52759 |
| Name of creditor: JPMorgan Chase Bank, N.A. successor by merger to Bank One | Last four digits of any number you use to identify the debtor's account: 8359 |

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1 Principal due      (1) $ 27,637.56

2 Interest due

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| 1.0% | 01/08/2013 | 10/21/2014 | $493.03 |
| ____% | _____ | _____ | $ _____ |
| ____% | _____ | _____ | + $ _____ |

Total interest due as of the petition date    $493.03    Copy total here (2) + $493.03

3. Total principal and interest due      (3) $28,130.59

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates Incurred | | Amount |
|---|---|---|---|
| 1. Late charges: | 10/14/2014, 02/11/2013<br>01/11/2013, 12/11/2012 at $25.00 each | (1) | $100.00 |
| 2. Non-sufficient funds (NSF) fees | _____ | (2) | $ _____ |
| 3. Attorney's fees | _____ | (3) | $ _____ |
| 4. Filing fees and court costs | _____ | (4) | $ _____ |
| 5. Advertisement costs | _____ | (5) | $ _____ |
| 6. Sheriff/auctioneer fees | _____ | (6) | $ _____ |
| 7. Title costs | _____ | (7) | $ _____ |
| 8. Recording fees | _____ | (8) | $ _____ |
| 9. Appraisal/broker's price opinion fees | _____ | (9) | $ _____ |
| 10. Property Inspection fees | _____ | (10) | $ _____ |
| 11. Tax advances (non-escrow) | _____ | (11) | $ _____ |
| 12. Insurance advances (non-escrow) | _____ | (12) | $ _____ |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | _____ | (13) | $ _____ |
| 14. Property preservation expenses. Specify: | _____ | (14) | $ _____ |
| 15. Total prepetition fees, expenses, and charges. Add all of the amounts listed above | | (15) + | $100.00 |

# Part 3: Statement of Amount Necessary to Cure Default as of the Petition Date

Does the Installment payment amount include an escrow deposit?

☒No

☐Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

| | | | |
|---|---|---|---|
| 1. Installment payments due | Date last payment received by creditor | 01/31/2013 | |
| | Number of installment payments due | (1) 21 | |
| 2. Amount of Installment payments due | | | |
| | 21 Installments 2/1/2013 - 10/1/2014 @ $175.35 $3,682.35 | | |
| 3. Calculation of cure amount Add total | Total installment payments due as of the petition date prepetition fees, expenses, and charges. | $3,682.35 Copy total from | Copy total here (2) $ 3,682.35 |
| | | | Part 2 here +$100.00 |
| | Subtract total of unapplied funds (funds received but not credited to account) | | - $0.00 |
| | Subtract amounts for which debtor is entitled to a refund | | - $_____ |
| | Total amount necessary to cure default as of the petition date | | (3) $ 3,782.35 |

Copy total onto Item 4 of Proof of Claim form

First Post-Petition Payment due 11/01/2014 in the amount of $175.35

Principal and interest $175.35

Basis for asserting that the applicable party has the right to foreclose:

JPMorgan Chase Bank, N.A., services the loan on the property referenced in this proof of claim. In the event the automatic stay in this case is lifted/set aside, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of JPMorgan Chase Bank, N.A. successor by merger to Bank One

Note-holder, directly or through an agent, has possession of the promissory note. The promissory note is either made payable to Note-holder or has been duly endorsed.


**BANK ONE.**

# BANK ONE HOME EQUITY LINE OF CREDIT [sm]
## AGREEMENT AND DISCLOSURE STATEMENT



References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

| Borrower: | RICHARD OLCZAK<br>KAREN L OLCZAK<br>8772 FENTON COURT<br>SAGAMORE HILLS, OH 44067 | Lender: | Bank One, NA<br>Twinsburg Banking Center - Akron<br>8023 Darrow Road<br>Twinsburg, OH 44087 |
|---|---|---|---|

**CREDIT LIMIT: $26,323.00**      **Date of Agreement: March 31, 2000**

**Introduction.** This BANK ONE HOME EQUITY LINE AGREEMENT AND DISCLOSURE STATEMENT ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through Bank One, NA. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, or any person using the Credit Line or related cards with the express or implied permission of any Borrower, including all Borrowers named above. The words "we", "us," "our," and "Lender" mean Bank One, NA. The word "Checks" means access checks issued and "Card" means the VISA card that may be issued to you in connection with this Credit Line Account. NOTE: Not all Bank One banks issue Cards. You agree to the following terms and conditions:

**Promise to Pay.** You promise to pay Bank One, NA, or order, the total of all credit advances and FINANCE CHARGES and other charges, together with all costs and expenses for which you are responsible under this Agreement or under the "Mortgage" which secures your Credit Line. You will pay your Credit Line according to the payment terms set forth below. You promise to pay for all purchases and advances made by you or any authorized person, even if that person exceeds your authority. If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any one of you to pay all amounts due under this Agreement, including credit advances made to any of you. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any of you from responsibility under this Agreement, and the others will remain responsible.

**Term.** The term of your Credit Line will begin as of the date of the Agreement ("Opening Date") and will continue as follows: until the 15th anniversary of the Opening Date. All indebtedness under this Agreement or Mortgage, if not already paid pursuant to the payment provisions below, will be due and payable at the end of this term. The Draw Period of your Credit Line will begin on a date, after the Opening Date, when this Agreement is accepted by us, following the expiration of your right to cancel, the perfection of the Mortgage, and your meeting all of our other conditions and will continue as follows: Five (5) years. You may obtain credit advances during this period ("Draw Period"). You agree that we may renew or extend the Draw Period. If we extend the Draw Period, the term of your Credit Line will be extended for an additional period of time equal to the period of time for which the Draw Period is extended, but not to exceed any limit established by state or federal law. After the Draw Period ends, you will no longer be able to obtain credit advances and you will thereafter be required to repay the balance outstanding on your Credit Line Account at the end of the Draw Period, together with interest thereon at the variable rate of interest as provided below, in substantially equal consecutive monthly installments in amounts sufficient to fully amortize the Credit Line Account over the remaining ten year period (the "Repayment Period") based upon the application of the variable rate of interest then in effect. If the interest rate on the Credit Line Account increases or decreases during the Repayment Period, you will pay more or fewer monthly payments of the same amount until the outstanding balance is paid in full.

**Security Interest/Collateral.** As security for all sums due under this Agreement, available under this Agreement, or amounts advanced or incurred pursuant to the terms of the Mortgage, you grant or agree to cause to be granted to us a Mortgage on the real estate located at: 8772 FENTON COURT in SUMMIT County, State of Ohio ("Property") which you occupy as your principal residence. Our rights and your obligations as to the Property are more fully described in the Mortgage. You agree to pay certain title, appraisal and other fees customarily incurred by us in association with the Mortgage.

**Minimum Payment.** During the Draw Period, your Regular Payment will be based on a percentage of your outstanding balance under the Credit Line as shown below, or $100.00, or the FINANCE CHARGE accrued for the month for which this statement is rendered, whichever is greater. Your payments will be due monthly. In any event, if your Credit Line balance falls below $100.00, you agree to pay your balance in full.

| Range of Balances | Number of Payments | Regular Payment Calculation |
|---|---|---|
| All Balances | 60 | 1.000 % of your outstanding balance |

During the Repayment Period, your Regular Payment will be based on an amortization of your balance at the start of the Repayment Period as shown below. Your payments will be due monthly. In calculating the payment amount by amortizing the balance over a certain period we will use the ANNUAL PERCENTAGE RATE in effect on the day we calculate your payment. However, if the ANNUAL PERCENTAGE RATE varies during the Repayment Period, the number of your Regular Payments will be increased or decreased to reflect the change in the ANNUAL PERCENTAGE RATE.

| Range of Balances | Amortization Period |
|---|---|
| All Balances | 120 payments |

Your "Minimum Payment" will be the Regular Payment, plus any amount past due and all other charges. In addition, we have the right to require you to pay fees and charges assessed on the Credit Line Account with and in addition to the Minimum Payment.

A change in the ANNUAL PERCENTAGE RATE can cause the balance to be repaid more quickly or more slowly. When rates decrease, less interest is due, so more of the payment repays the principal balance. When rates increase, more interest is due, so less of the payment repays the principal balance. If this happens, we may adjust your payment as follows: Each time the ANNUAL PERCENTAGE RATE increases we will review the effect the increase has on your Credit Line Account. If the ANNUAL PERCENTAGE RATE increases or decreases within the Repayment Period, the number of your payments will be increased or decreased accordingly. You agree to continue making payments until the entire outstanding balance is paid in full. You agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement.

Under some circumstances, the Repayment Period installments will not cover the Finance Charges and 'negative amortization' will occur. Negative amortization will increase the amount you owe us and reduce your equity in your property.

**Application of Payments.** Unless otherwise agreed or required by applicable law, payments and other credits will be applied in the following order: to (a) FINANCE CHARGES; (b) unpaid principal; and (c) late charges and other fees and charges. Payments will be applied on the basis of a weighted average of the scheduled payments for each Look (defined later) established and the Credit Line: (i) First to FINANCE CHARGES; then (ii) to the outstanding principal balance, and then (iii) to fees and charge ("fees"), if any. Any payments representing credit advances will be applied first to the Credit Line, then to any Look chosen at our discretion, unless you designate a particular Look on the monthly statement remittance coupon.

**Receipt of Payments.** All payments must be made by a check, money order, or other instrument in U.S. dollars and must be mailed to us at the remittance address shown on your periodic billing statement. Payments received at that address on any business day will be credited to your Credit Line as of the date received. If we receive payments at other locations, such payments will be credited promptly to your Credit Line, but crediting may be delayed for up to five (5) days after receipt.

**Credit Limit.** This Agreement covers a revolving line of credit for Twenty Six Thousand Three Hundred Twenty Three & 00/100 Dollars ($26,323.00), which will be your "Credit Limit" under this Agreement. During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights. You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit. If we have not yet billed you, We may at our option refuse credit advances for so long as the balance due exceeds your Credit Limit. Any credit advances in excess of your Credit Limit other than accrued but unpaid interest and expenditures made by us under the Mortgage as provided for in the Mortgage shall not be secured by the Mortgage covering your principal dwelling.

**Charges to Your Credit Line.** We may charge your Credit Line to pay fees and costs that you are obligated to pay under this Agreement, under

the Mortgage or under any other document related to your Credit Line. In addition we may charge your Credit Line for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below or as described in the Mortgage. We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your Property. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your Property. If you do not pay your property taxes, we may charge your Credit Line and pay the delinquent taxes. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph. If you have elected to purchase credit life insurance, we may charge your Credit Line each month for credit life insurance premiums as they become due. Each month the insurance charge that will be added to the principal balance of your Account will be calculated by multiplying the average daily balance by the premium option you have selected. The premium will be included as a regular purchase and will be added to the principal balance upon which we will earn interest at the rate set forth herein. We have the right to change the premium rate by giving you notice of this action thirty (30) days prior to the effective date. The new rate will apply only to charges for insurance made after the date of the rate change.

**Credit Advances.** After the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows:

    (a) Writing a preprinted "Credit Line Check" that we will supply to you.

    (b) Requesting a credit advance in person at any of our authorized locations.

    (c) Using your Card to make purchases of goods and services from businesses that accept the Card, to obtain cash advances from all financial institutions and automated teller machines that accept the Card.

If your Credit Line Account is a joint account, you and the joint holder agree that each is the agent for the other account holder for purposes of requesting Credit Limit increases.

**Credit Line Checks.** Your Credit Line Account may be accessed by special Checks provided by us. You will receive these Credit Line Checks imprinted with your account number and may use them in the same manner as a regular checking account. The amount of each Check will be treated as credit advances when posted to your Credit Line Account. You agree not to use the proceeds of any credit advance for the purpose of refinancing the Property securing this Agreement. You may make an advance on the Credit Line to pay off the entire outstanding balance of any Lock during the term of this Agreement. Except as otherwise provided in this Agreement, checks will be subject to all laws normally applicable to negotiable instruments governed by the Ohio Uniform Commercial Code.

**Limitations on the Use of Credit Line Checks.** We reserve the right not to honor Credit Line Checks in the following circumstances:

    (a) Your Credit Limit has been or would be exceeded by paying the Credit Line Check.

    (b) Your Credit Line Check is post-dated. If a post-dated Credit Line Check is paid and as a result any other check is returned or not paid, we are not responsible.

    (c) Your Credit Line Checks or Card have been reported lost or stolen.

    (d) Your Credit Line Check is not signed by you.

    (e) Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the Credit Line Check.

If we pay any Credit Line Check under these conditions, you must repay us, subject to applicable laws, for the amount of the Credit Line Check. The Credit Line Check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a Credit Line Check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. We may choose not to return Credit Line Checks along with your periodic billing statements; however, we will make available to you, upon request, any paid Credit Line Check or a copy thereof for at least six years after the date of the statement reflecting payment of the Credit Line Check. We do not "certify" Credit Line Checks drawn on your Credit Line. We have no responsibility for the refusal of any merchants, banks or others to honor the Credit Line Checks or other access devices, or for any goods or services purchased through the use of your Credit Line Account.

**Lost Credit Line Checks or Card.** If you lose your Credit Line Checks and/or Card(s) or someone is using them without your permission, you agree to let us know immediately by calling us at (800) 477-2265. You can also notify us at our address shown at the beginning of this Agreement.

**Future Credit Line Features.** Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services.

**Insurance.** You must obtain insurance on the Property securing this Agreement that is reasonably satisfactory to us. You agree to obtain and maintain adequate insurance against fire, flood and other reasonable risks to the Property, with standard mortgagee clause in our favor, as our interest may appear, as we require. You may obtain property insurance through any agent, broker or insurance company of your choice, which is licensed to do business in the state where the real estate is located but we reserve the right to reject any insurance company for reasonable cause. Subject to applicable law, if you fail to obtain or maintain insurance as required in the Mortgage, we may purchase insurance to protect our own interest, add the premium to your Credit Line, pursue any other remedies available to us, or do any one or more of these things.

**Right of Setoff.** Unless a lien would prohibit by law or would render a nontaxable account taxable, you grant to us a security interest in, and hereby assign, convey, deliver, pledge, and transfer to us all right, title and interest in and to, your accounts with us (whether checking, savings, or any other account, including without limitation all accounts held jointly with someone else and all accounts you may open in the future. You authorize us, to the extent permitted by applicable law, to charge or setoff all sums owing on this Agreement against any and all such accounts.

**Periodic Statements.** If you have a balance owing on your Credit Line Account or have any account activity, we will send you a periodic statement. It will show, among other things, credit advances, FINANCE CHARGES, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement will also identify the Minimum Payment you must make for that billing period and the date it is due.

**When FINANCE CHARGES Begin to Accrue.** Periodic FINANCE CHARGES for credit advances under your Credit Line will begin to accrue on the date credit advances are posted to your Credit Line. There is no "free ride period" which would allow you to avoid a FINANCE CHARGE on your Credit Line credit advances.

**Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed.** FINANCE CHARGES will be incurred on the Daily Principal Balances of all credit advances made hereunder from the date such transactions are posted to the Credit Line Account until payment in full is entered to the Account. FINANCE CHARGES are determined by multiplying your Daily Principal Balances during the statement period by the daily Periodic Rate as described below. The Daily Principal Balance is the amount of principal (excluding unpaid Periodic FINANCE CHARGES and fees) outstanding at the end of each day during the statement period.

**Method of Determining the Amount of FINANCE CHARGE.** Any FINANCE CHARGE is determined by applying the "Periodic Rate" to the balance described above.

**Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** The daily Periodic Rate used in calculating the FINANCE CHARGE will be a variable rate. The daily Periodic Rate may vary from month to month. The daily Periodic Rate shall be the index plus .280% divided by 365. We will determine the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE as follows. We start with an index which is the average weekly BANK PRIME LOAN RATE as published by Board of Governors of The Federal Reserve System in Statistical Release H.15 for the week which includes the 15th day of the month (the "Index"). To determine the Periodic Rate that will apply to your account, we add a margin to the value of the Index, then divide the value by the number of days in a year (daily). To obtain the ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by the number of days in a year (daily). This result is the ANNUAL PERCENTAGE RATE. The ANNUAL PERCENTAGE RATE includes only interest and no other costs.

The Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line will increase or decrease as the Index increases or decreases from time to time. An increase in the Index will result in an increase in the daily Periodic Rate which may increase the minimum payment due on the Credit Line Account. Adjustments to the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE resulting from changes in the Index will take effect month to month. In no event will the ANNUAL PERCENTAGE RATE be more than the lesser of 25.000% or the maximum rate allowed by applicable law. Today the Index is 8.750% per annum, and therefore the initial Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line are as stated below:

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 1.250 % | 10.000 % | 0.02740 % |

Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed portion of the Credit Line.

**Conversion Option.** This Agreement contains an option to convert the interest rate from a variable rate (with interest rate limits) to a fixed rate as calculated below. The following information is representative of conversion features recently offered by us.

ANNUAL PERCENTAGE RATE Increase. Your ANNUAL PERCENTAGE RATE may increase if you exercise this option to convert to a fixed rate.

Conversion Periods. You can exercise the option to convert to a fixed rate only during the following period or periods: At any time during the Draw Period. You, with our written consent, any one of you may convert the repayment schedule for either the entire outstanding balance on the Credit Line Account or any portion thereof for a term not to exceed ten (10) years and at a fixed rate, dependent upon the term chosen by you (a "Lock"). You may have up to five (5) Locks outstanding at any one time but may not make additional advances to any one Lock once established. The total outstanding balance in any Lock will not be subject to the "Credit Advances" and "Minimum Payment" sections of this Agreement. Instead, when each Lock is established, we will determine the payment amount that would be required to pay off the balance in that Lock in substantially equal payments over the term of the Lock at the fixed rate applicable to that Lock. Therefore, your minimum payment due each month will be the sum of the fixed payment amount for each Lock plus the minimum payment amount for the balance of your Account which has not been designated as a Lock (the "Credit Line"), calculated using the formula set forth in the "Minimum Payment" section of this Agreement. Additional payments in any Lock may be made at any time but shall not affect your obligation to pay exceeding Lock payments as long as any amount is still owing on the Lock. Any payment made upon your outstanding principal balance in any Lock will be available on the Credit Line for you to draw against upon the posting of such payment.

Conversion Fees. You will be required to pay the following fees at the time of conversion to a fixed rate: We may charge you $50.00 for each Lock that we set up at your request.

Rate Determination. The fixed rate will be determined as follows: We shall establish the fixed rate and term when each Lock is opened by you based upon the term and rate available for a comparable Home Equity Loan offered by us at that time based upon a like loan to value ratio or upon a rate and term otherwise agreed to. A complete disclosure of the terms of the Lock shall be provided to you before the Lock is established which shall apply whether or not you have signed and returned the Lock disclosure.

Conversion Rules. You can convert to a fixed rate only during the period or periods described above. In addition, the following rules apply to the conversion option under this Agreement: If you repay a Lock in full before fifty percent (50%) of the scheduled payments are due, you will pay a prepayment charge of one percent (1%) of the original Lock balance. In addition to all interest, other fees, and amounts due under this Agreement.

**Conditions Under Which Other Charges May be Imposed.** To the extent permitted by applicable law, we will charge and you agree to pay all the other fees and charges related to your Credit Line as set forth below:

Annual Fee. A nonrefundable Annual Fee of $50.00 may be charged to your Credit Line at the following times: The Annual fee is payable in advance for each year, and may be charged to the Account annually. No refund of any part of the Annual Fee will be made in the event of cancellation of the Account for any reason.

Returned Items. You may be charged $25.00 if you pay your Credit Line obligations with a check, draft, or other item that is dishonored for any reason, unless applicable law requires a lower charge or prohibits any charge.

Fee to Stop Payment. Your Credit Line Account may be charged $25.00 when you request a stop payment of a Check drawn on your Account.

Overlimit Charge. Your Credit Line Account may be charged $25.00 in the event you incur charges in amounts exceeding your Credit Limit, and for each credit advance submitted against the Credit Line Account which we refuse to honor because such advance, if paid, would create a balance due in excess of your Credit Limit. This includes writing a Credit Line Check in excess of your available balance.

Late Charges. Your payment will be late if it is not received by us within 10 days of the "Payment Due Date" shown on your periodic statement. If your payment is late we may charge you $25.00.

Credit Line Check Printing Charge. Your Credit Line Account may be charged for check printing. This charge may vary.

Scheduled Fee Changes. Account Closing Fee. Your Credit Line Account may be charged $250.00 if you close or terminate your Credit Line Account within two (2) years of the Loan Date shown above.

Other Charges. Your Credit Line Account may be charged the following other charges: Delinquent Account Check Charge and Over Limit Check Charge. We may charge you a fee for the return of a check because you are delinquent or in default in any respect concerning the Credit Line Account. We may also charge you a fee for a Credit Line Check which causes your Credit Line Account to exceed your Credit Limit. The amount of each of these other charges is: $25.00.

**Lender's Rights.**

(a) Termination and Acceleration. If any of the following happen, we may, at our option (i) terminate your Credit Line Account and require you to pay us the entire outstanding balance in one payment, and charge you certain fees, (ii) temporarily or permanently prohibit any additional extensions of credit, and (iii) temporarily or permanently reduce the Credit Line.

(1) You commit fraud or make a material misrepresentation at any time in connection with the Credit Line Account. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition.

(2) You do not meet the repayment terms of this Credit Line Account.

(3) Your action or inaction adversely affects the Property or our rights in the Property. This can include, for example, failure to maintain required insurance, waste or destructive use of the Property, failure to pay taxes, death of any or all persons liable on the account, transfer of title or sale of the Property, creation of a senior lien on the Property without our permission, foreclosure by the holder of another lien or the use of funds or the dwelling for prohibited purposes.

(b) Suspension or Reduction. In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

(1) The value of your Property declines significantly below the Property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the Credit Limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

(2) We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances.

(3) You are in default under any material obligations of this Credit Line Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under Termination and Acceleration, obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the Property or proceeds, obligations to pay and perform the terms of the Mortgage or any other mortgage or lease of the Property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any comaker.

(4) We are precluded by government action from imposing the ANNUAL PERCENTAGE RATE provided for under this Agreement.

(5) The priority of our Mortgage is adversely affected by government action to the extent that the value of the Mortgage is less than 120 percent of the Credit Limit.

(6) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice.

(c) Reinstatement. In order to reinstate the Agreement, you must send us a written request to that effect. We will only reinstate the Credit Line Account if we determine to our satisfaction that the condition or reason which caused us to prohibit Credit Advances or to reduce the Credit Limit either no longer exists or has been corrected. If an appraisal or title report is required to make such determination, we may charge you for any such fee(s), which will be billed to your Account as a credit advance.

(d) Change in Terms. We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the

change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems). If the Index is no longer available, we will choose a new Index and margin. The new Index will have an historical movement substantially similar to the original Index, and the new Index and margin will result in an ANNUAL PERCENTAGE RATE that is substantially similar to the rate in effect at the time the original Index becomes unavailable. We may prohibit additional extensions of credit or reduce your Credit Limit during any period in which the maximum ANNUAL PERCENTAGE RATE under your Credit Line Account is reached.

(e) **Access Devices.** If your Credit Line is suspended or terminated, you must immediately return to us all Credit Line Checks and any other access devices. Any use of Credit Line Checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of Credit Line Checks or other Credit Line access devices not returned to us.

**Delay in Enforcement.** We may accept late payments, partial payments or payments marked "payment in full" without losing any of our rights under this Agreement. The waiver of any of our rights and remedies at any time will not have given up or lost the right to exercise any of our rights and remedies at any later time. We may delay in enforcing any of our rights and remedies under this Agreement without losing them. Failure by us to assert any of our rights shall not waive such rights. We may also take any collection action allowed by law.

**Cancellation.** If you cancel your right to credit advances under this Agreement, you must notify us in writing and return all Credit Line Checks and any other access devices to us. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement. If more than one person has signed this Agreement, cancellation of the Credit Line Account by one signer of the Agreement shall cancel the Credit Line Account for all persons on the Account. Use of the Credit Line Account after termination or notice of cancellation is fraudulent and you may be subject to legal proceedings.

**Prepayment.** You may prepay all or any amount owing under this Credit Line at any time without penalty except as provided in this Agreement and except that we will be entitled to receive all accrued FINANCE CHARGES, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Credit Line.

**Notices.** All notices will be sent to your address as shown in this Agreement. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

**Credit Information and Related Matters.** You authorize us to release information to others (such as credit bureaus, merchants, and other financial institutions) about the status and history of your Credit Line Account. You agree that, upon our request, you will provide us with a current financial statement, a new credit application, or both, on forms provided by us. You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition. We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense.

**Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account to another lender, entity, or person, and to assign our rights under this Agreement and the Mortgage. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives.

**Governing Law.** This Agreement and its interpretation will be governed by federal law and by the laws of the State of Ohio. If there is any conflict between any of the terms and conditions of this Agreement and applicable federal or state law, this Agreement will be considered changed to the extent necessary to comply with the law.

**Interpretation.** The names given to paragraphs or sections in this Agreement are for convenience purposes only. They are not to be used to interpret or define the provisions of this Agreement. You agree that this Agreement, together with the Mortgage, is the best evidence of your agreements with us. If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court may enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Mortgage, or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic billing statement is the best evidence of your obligation to pay.

**IMPORTANT INFORMATION SHARING NOTICE.** Lender shares information regarding transactions and experiences about you and your account with other BANK ONE CORPORATION ("BANK ONE") companies. We may also share other information such as employment and credit history, information on your applications, information involving other BANK ONE relationships and any other information among BANK ONE companies. You have the right to prohibit sharing this other information to the extent permitted by the Fair Credit Reporting Act ("FCRA"). If you would like to exercise this right, please write to us at BANK ONE, FCRA Opt-Out, P.O. Box 182793, Columbus, Ohio 43218-2793, and include your name, social security number, account number, telephone number, and sign and date your correspondence. If your account is a joint account, each joint account owner that desires to opt out must provide the above information including their signature. You may receive additional notices of your right to opt out, but you only need to respond once to exercise this right.

**Acknowledgment.** You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a copy of this Agreement, including the Fair Credit Billing Notice and the early home equity line of credit application disclosures, in addition to the handbook entitled "When Your Home is On the Line: What You Should Know About Home Equity Lines of Credit," given with the application.

**Entire Agreement.** This Agreement is intended by Lender and you as a final expression of this Agreement and as a complete and exclusive statement of its terms, there being no conditions to the enforceability of this Agreement. This Agreement may not be supplemented or modified except in writing.

This Agreement is dated March 31, 2000.

BORROWER:

X _Richard Olczak_
   RICHARD OLCZAK

X _Karen L Olczak_
   KAREN L OLCZAK

Effective Disbursement Date: The first business day after April 4, 2000.

---

## NOTICE TO COSIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay it if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of YOUR credit record.

This notice is not the contract that makes you liable for the debt.

This Document Prepared By:
MONICA A. SANTIAGO
JPMORGAN CHASE BANK N.A.
4915 INDEPENDENCE PKWY, FLOOR 4
TAMPA, FL 33634
(866) 378-5896

When Recorded Mail To:
JPMORGAN CHASE BANK N.A.
4915 INDEPENDENCE PKWY, FLOOR 4
TAMPA, FL 33634

Tax/Parcel No. 4504855

_____ [Space Above This Line for Recording Data] _____

Original Principal Amount: $26,323.00
Unpaid Principal Amount: $26,140.01
New Principal Amount $28,239.98
New Money (Cap): $2,099.97



# MODIFICATION AGREEMENT

Borrower ("I"): [1] RICHARD OLCZAK AND KAREN L. OLCZAK, HUSBAND AND WIFE, FOR THEIR JOINT LIVES, REMAINDER TOT HE SURVIVOR OF THEM
Lender or Servicer ("Lender"): JPMORGAN CHASE BANK N.A.
Date of mortgage, deed of trust, or security deed ("Mortgage") and Note or Line of Credit Agreement ("Note"): APRIL 5, 2000

Property Address ("Property"): 8772 FENTON COURT, SAGAMORE HILLS, OHIO 44067

Legal Description:
SITUATED IN THE TOWNSHIP OF SAGAMORE HILLS, COUNTY OF SUMMIT, STATE OF OHIO, AND BEING KNOWN AS SUBLOT 48 IN TRAILS CROSSING AT EATON ESTATE CLUSTER DEVELOPMENT, RECORDED IN PLAT RECEPTION NUMBER 54311903 OF SUMMIT COUNTY RECORDS.

_____

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.
Chase Custom Cluster Loan Modification 07232012_95
First American Mortgage Services                                    Page 1

Prior Instrument reference: Recorded on APRIL 25, 2000 in INSTRUMENT NO. 54414966, of the Official Records of SUMMIT COUNTY, OHIO

If my representations in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.    **My Representations.** I certify, represent to Lender and agree:

    A.   The Property has not been condemned;

    B.   There has been no change in the ownership of the Property since I signed the Loan Documents.

2.    **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A.   TIME IS OF THE ESSENCE under this Agreement. This means I must make all payments on or before the days that they are due;

    B    If the Lender determines that an of my representations in Section 1 are not true and correct as of the Modification Effective Date identified in Section 3, the Loan Documents will not be modified and this Agreement will terminate, or if the Loan Documents have already been modified, this Agreement will be rescinded and the Loan will revert back to the original terms of the Loan Documents. In either event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    C    I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement or any other requirements of the Program.

    D    I understand and agree that if I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, I am voluntarily entering into this modification for the benefits to be obtained thereby and not as a reaffirmation of the debt evidenced by the Note, and I further understand and agree, and the Lender, by its execution of this Agreement also agrees, that nothing contained herein is intended to impose personal liability for the Loan in violation of such discharge.

3.    **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **SEPTEMBER 1, 2012** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout, this modification will not take effect. The first modified payment will be due on **OCTOBER 1, 2012.**

Chase Custom Cluster Loan Modification 07232012_95
First American Mortgage Services                    Page 2

A.  The Maturity Date will be: **FEBRUARY 1, 2027**

B.  The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement. The new principal balance of my Note will be $28,239.98 (the "New Principal Balance").

C.  Interest at the rate of 1.0000% will begin to accrue on the New Principal Balance as of **SEPTEMBER 1, 2012** ("Interest Rate Effective Date"). Beginning on the **SEPTEMBER 1, 2017** anniversary date of the Interest Rate Effective Date, the interest rate will adjust by 1% each year until the rate of 3.5000% is reached.

I will begin to make modified monthly payments on **OCTOBER 1, 2012** and on the same day of each month thereafter (the "Amortizing Payment Date"). Beginning on the Amortizing Payment Date, I will begin to make monthly payments in an amount necessary to repay the unpaid balance of the New Principal Balance in substantially equal monthly installments of principal and interest at the interest rate then in effect over the remaining term of the Loan. With each scheduled interest rate adjustment after the Amortizing Payment date, my monthly payment will be further adjusted to an amount necessary to repay the remaining unpaid balance of the New Principal Balance as of the interest rate adjustment date in substantially equal monthly installments of principal and interest over the remaining term of the Loan. I understand that the Lender will provide me with notice of my new interest rate and payment amount prior to the due date of any such new payment.

The estimated payment schedule for the modified Loan will be as follows:

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Payment Begins On | Number of Monthly Payments |
|--------|--------------|---------------------------|----------------------------------------------|-------------------|----------------------------|
| 1 – 60 | 1.0000% | 09/01/2012 | $175.35 | 10/01/2012 | 60 |
| 61 – 72 | 2.0000% | 09/01/2017 | $183.67 | 10/01/2017 | 12 |
| 73 – 84 | 3.0000% | 09/01/2018 | $191.35 | 10/01/2018 | 12 |
| 85 – 173 | 3.5000% | 09/01/2019 | $194.81 | 10/01/2019 | 89 |

Monthly payment amounts are estimated because this is a daily simple interest loan. Interest will accrue daily and payments will be applied as of the date received by the Lender according to the terms of the Loan Documents. Interest accrues by applying the ratio of the annual interest rate over the number of days in the year (365 or 366 in a leap year), multiplied by the principal balance, multiplied by the actual number of days the principal balance is outstanding. All payment amounts specified in this Agreement assume that all payments will be made on the payment due date throughout the life of the loan. If I pay before or after the payment due date, the amount of interest and principal will vary. For example, if I pay a monthly amortizing payment after the due date, more of the payment will go toward interest and less toward principal. As a result, the principal may be reduced more slowly over the term of the loan, and I could still

owe principal at the maturity date of the loan. All accrued and unpaid interest will be applied before any amounts are applied toward principal. Notwithstanding any scheduled payment shown in this Agreement, at any scheduled interest rate adjustment date, my monthly payment will be adjusted to an amount necessary to repay the remaining unpaid balance as of the interest rate adjustment date in substantially equal monthly installments of principal and interest over the remaining term of the loan, assuming I pay on the due date. Lender will not accept multiple monthly payments in advance of their due date.

    D.   I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

    E.   If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.    Additional Agreements. I agree to the following:

    A.   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

    B.   That this Agreement shall supersede the terms of any modification, forbearance or workout plan that I previously entered into with Lender for my Mortgage.

    C.   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

    D.   That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

    E.   That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

    F.   That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay

Chase Custom Cluster Loan Modification 07232012_95
First American Mortgage Services          Page 4

these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

G. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

H. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

I. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

J. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

K. That Lender may collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of this Modification Agreement by Lender to any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my mortgage loan.

L. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4. M shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

M. If I receive a separate notice from Lender that I am required to attend additional debt management counseling, I agree to promptly attend such counseling and provide evidence of attendance to Lender upon request.

Chase Custom Charter Loan Modification 07232012_95
First American Mortgage Services                    Page 5

N. If this Agreement includes an extension of the maturity date for my loan and the Property is located in a Special Flood Hazard Area ("SFHA"), as part of this payment extension process, I understand that the Lender is required by law to send me another flood notice confirming the Property's flood status. Lender is required to do so even though it periodically checks to ensure that I have flood insurance. As a result, if I receive this additional notice from Lender, I agree to immediately sign the Flood Notice Acknowledgment, as required, and return it to Lender. I also acknowledge that I am responsible for continuing any insurance coverage on the Property beyond the original maturity date of my loan.

O. If my loan is a home equity line of credit ("HELOC"), I understand that (i) access to funds in the line of credit has been permanently closed, so I am not able to obtain any further advances, notwithstanding any references in the Loan Documents, or otherwise, to the Loan being a line of credit; (ii) any devices used for accessing the credit line, such as checks or credit cards, are void; (iii) if I have had separate balances on the HELOC that were charged interest at different interest rates, including fixed or variable rates, all balances are combined into a single balance that will be charged interest at the rate established in Section 3 of this Agreement, and I will not have the option of locking in or electing different interest rates or other payment terms in the future; (iv) if I have had the option to pay interest-only payments on any balances, all payments under this Agreement will be as set forth in Section 3 of this Agreement; and (v) if I have had special incentive interest rates involving a reduction in my interest rate for automatic payments or other relationships with the Lender, these special incentives no longer apply.



In Witness Whereof, I have executed this Agreement.

_Richard Olczak_ (Seal)
Borrower
RICHARD OLCZAK
9-19-1~
Date

_Karen L. Olczak_ (Seal)
Borrower
KAREN L. OLCZAK
9-19-12
Date

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____
Date

_____
Date

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____
Date

_____
Date

_____[Space Below This Line for Acknowledgments]_____

**BORROWER ACKNOWLEDGMENT**

State of **OHIO**

County of _Summit_

The foregoing instrument was acknowledged before me this _19th of September 2012_ (date) by
RICHARD OLCZAK, KAREN L. OLCZAK (name of person acknowledged)

_Alex Z Kta_
(Signature of person taking acknowledgment)

_Notary Public_
(Title or rank)

_N/A_
(Seal Number, if any)

ALEXIS L. KOTA, NOTARY
STATE OF OHIO
MY COMMISSION EXPIRES: 8/11/2018

In Witness Whereof, the Lender have executed this Agreement.

JPMORGAN CHASE BANK N.A.

By _(signature)_ Robert ORorke _9-21-12_
          (print name)                           Date
          (title)

_____ [Space Below This Line for Acknowledgments] _____

LENDER ACKNOWLEDGMENT

STATE OF _Florida_

COUNTY OF _Hillsborough_

The foregoing instrument was acknowledged before me this _9-21-12_
by _Robert ORorke_
_AVP_ , of JPMORGAN CHASE BANK N.A., a
_National Banking Association_ corporation, on behalf of the
corporation. He/She is personally known to me or who has produced _____
as identification.

_(signature) Eileen A. Youngcourt_
(Signature of person taking acknowledgment)
_Eileen A. Youngcourt_
(Name typed, printed or stamped)
_Notary_
(Title or rank)

_____
(Serial number, if any)

EILEEN A. YOUNGCOURT
Expires 3/18/20██
Florida Notary Assn., Inc.

Chase Custom Cluster Loan Modification 07232012_95
First American Mortgage Services           Page 8

# CHASE ⬡

Chase wants to congratulate you on qualifying for the pre-approved loan modification offer that accompanies this notice. Please review the offer materials carefully. If you decide to accept the offer, the terms of your modified Loan will have the following changes effective with your first modified payment due on **OCTOBER 1, 2012**:

| | |
|---|---|
| Prior Principal and Interest: $257.58* | New Principal and Interest: $175.35* |
| Prior Interest Rate: 8.2500% | New Interest Rate: 1.0000% |
| Prior ARM Index: Not applicable | New ARM Index: Not applicable |

*This amount does not include monthly escrow payments for taxes, insurance or similar items.

Assuming you make your current minimum payments on time, your loan balance as of the **09/01/2017** interest rate change date is anticipated to be $_____18,903.39_____. Please reference the final modification agreement enclosed as a part of the offer materials for complete terms and conditions of your modified loan. The new terms stated above will only go into effect if you accept the offer within the time required.



# DOCUMENT CORRECTION AGREEMENT
## ("Agreement")

**AGREEMENT TO CORRECT MISSTATED DOCUMENTS AND TO PROVIDE ADDITIONAL DOCUMENTATION OR FEES:** In consideration of Chase Home Finance LLC ("Chase") modifying the Loan (the "Modification") as requested by the undersigned ("Borrower"), and regardless of the reason for any loss, misplacement, or inaccuracy in the modification agreement or any other document prepared in connection with the Modification, Borrower agrees as follows: if any document is lost, misplaced, misstated or inaccurately reflects the true and correct terms and conditions of the Modification, upon request of Chase, Borrower will comply with Chase's request to execute, acknowledge, and deliver to Chase any documentation ("Replacement Documents") Chase deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). Borrower agrees to deliver the Replacement Documents within ten (10) days after receipt by Borrower of a written request for such replacement. Borrower also agrees that upon request Borrower will pay to Chase any additional sum ("Fee") previously disclosed to Borrower as a cost or fee associated with the Modification, which, for whatever reason, was not previously collected.

**REQUEST BY CHASE:** Any request under this Agreement made by Chase, (including assignees and persons acting on behalf of Chase), shall be prima facie evidence of the necessity for same. A written statement addressed to Borrower, first class postage prepaid, at the mailing address indicated in Chase's records shall be considered conclusive evidence of receipt by Borrower of the request for Replacement Documents.

**BORROWER LIABILITY:** If Borrower fails or refuses to execute, acknowledge, and deliver the Replacement Documents or Fee to Chase more than (10) days after being requested to do so by Chase, Borrower shall be liable for any and all loss or damage which Chase reasonably sustains thereby, including, but not limited to all reasonable attorneys' fees and costs incurred by Chase. In addition, Chase may elect to declare the Modification null and void in which case the Loan shall be payable at the rate and on the terms as existed prior to the Modification. Any funds received by Chase in conjunction with the Modification shall be retained by Chase and applied to the Loan as determined by Chase in its discretion.

RICHARD OLCZAK      Date    9 - 19 · 12

KAREN L. OLCZAK      Date    9-19-12

       Date

       Date

       Date

       Date

3

RECORDATION REQUESTED BY:

Bank One, NA
9023 Darrow Road
Twinsburg, OH 44087

WHEN RECORDED MAIL TO:

Regional Loan Servicing Center
P. O. BOX 11606
Lexington, KY 40576-1606

54414966
PAGE 1 OF 3
04/25/2000 08:29A
JAMES B MCCARTHY   SUMMIT CO AUDITOR

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

**BANK ONE.**

# OPEN - END MORTGAGE

**The Maximum Amount of Loan Indebtedness** secured by this Open-End Mortgage is **$26,323.00.** The words "Maximum Amount of Loan Indebtedness" as used in this paragraph mean the maximum unpaid balance of loan advances made under the Note which may be outstanding at any one time. The Maximum Amount of Loan Indebtedness does not include any of (a) taxes, (b) taxes, (c) assessments, (d) insurance premiums, or (e) costs incurred for the protection of the Property. Grantor and Lender intend that, in addition to any other indebtedness or obligations secured hereby, this Mortgage shall secure indebtedness arising from loan advances made by Lender after this Mortgage is delivered to the recorder for record.

**THIS MORTGAGE IS MADE THIS MARCH 31, 2000, between RICHARD OLCZAK and KAREN L OLCZAK AKA KAREN OLCZAK, WITH VESTING AS FOLLOWS: RICHARD OLCZAK and KAREN OLCZAK AKA KAREN L OLCZAK, HUSBAND AND WIFE, whose address is 8772 FENTON COURT, SAGAMORE HILLS, OH   44067 (referred to below as "Grantor");   and Bank One, NA, whose address is 9023 Darrow Road, Twinsburg, OH 44087 (referred to below as "Lender").**

**GRANT OF MORTGAGE.** For valuable consideration, Grantor grants, mortgages and conveys to Lender, with mortgage covenants and upon the statutory condition, all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, all tenant security deposits, utility deposits and all proceeds (including without limitation premium refunds) of each policy of insurance relating to any of the Improvements, the Personal Property or the Real Property; all rents, issues, profits, revenues, royalties or other benefits of the Improvements, the Personal Property or the Real Property; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, located in SUMMIT County, State of Ohio (the "Real Property"):

SITUATED IN THE TOWNSHIP OF SAGAMORE HILL, COUNTY OF SUMMIT, STATE OF OHIO, AND BEING KNOWN AS SUBLOT 48 IN TRAILS CROSSING AT EATON ESTATES CLUSTER DEVELOPMENT,. RECORDED IN PLAT RECEPTION NUMBER 54311903 OF SUMMIT COUNTY RECORDS. Parcel ID Number: 4504855

**The Real Property or its address is commonly known as 8772 FENTON COURT, SAGAMORE HILLS, OH 44067.**

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**DEFINITIONS.** The following words shall have the following meanings when used in this Mortgage. Terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code. All references to dollar amounts shall mean amounts in lawful money of the United States of America.

**Borrower.** The word "Borrower" means each and every person or entity signing the Note, including without limitation RICHARD OLCZAK and KAREN L OLCZAK.

**Credit Agreement.** The words "Credit Agreement" mean the revolving line of credit agreement dated March 31, 2000, between Lender and Borrower **with a maximum credit limit of $26,323.00,** together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the Credit Agreement.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described below in the Existing Indebtedness section of this Mortgage.

**Grantor.** The word "Grantor" means any and all persons and entities executing this Mortgage, including without limitation all Grantors named above. The Grantor is the mortgagor under this Mortgage. Any Grantor who signs this Mortgage, but does not sign the Credit Agreement, is signing this Mortgage only to grant and convey that Grantor's interest in the Real Property and to grant a security interest in Grantor's interest in the Rents and Personal Property to Lender and is not personally liable under the Credit Agreement except as otherwise provided by contract or law.

**Guarantor.** The word "Guarantor" means and includes without limitation, each and all of the guarantors, sureties, and accommodation parties in connection with the Indebtedness.

**Indebtedness.** The word "Indebtedness" means all principal and interest payable under the Credit Agreement and any amounts expended or advanced by Lender to discharge obligations of Grantor or expenses incurred by Lender to enforce obligations of Grantor under this Mortgage, together with interest on such amounts as provided in this Mortgage. Specifically, without limitation, this Mortgage secures a revolving line of credit, which obligates Lender, pursuant to a contractual commitment, to make advances to Borrower conditioned upon Borrower complying with the terms of the Credit Agreement. Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Grantor and Lender that this Mortgage secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided above and any intermediate balance.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender, and includes without limitation all assignments and security interest provisions relating to the Personal Property and Rents.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to, or located on, the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the property, interests and rights described above in the "Grant of Mortgage" section.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ALL OBLIGATIONS OF GRANTOR UNDER THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Borrower shall pay to Lender all Indebtedness secured by this

03-31-2000  54414966
Page: 2 of 3
04/25/2000 00:28P
MO 16.00

JAMES B MCCARTHY SUMMIT CO AUDITOR

Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all their respective obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor and Borrower agree that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until in default, Grantor may remain in possession and control of and operate and manage the Real Property and collect the Rents.

**Duty to Maintain.** Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), soil, gravel or rock products without the prior written consent of Lender.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at its option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without the Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest therein; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of Real Property interest. If any Grantor is a corporation, partnership or limited liability company, "sale or transfer" also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Ohio law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are a part of this Mortgage.

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Mortgage, except for the lien of taxes and assessments not due.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property at any time become located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance for the full unpaid principal balance of the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at its election, apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property.

**EXPENDITURES BY LENDER.** If Grantor fails to comply with any provision of this Mortgage, including any obligation to maintain Existing Indebtedness in good standing as required below, or if any action or proceeding is commenced that would materially affect Lender's interests in the Property, Lender on Grantor's behalf may, but shall not be required to, take any action that Lender deems appropriate. Any amount that Lender expends in so doing will bear interest at the rate provided for in the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses, at Lender's option, will (a) be payable on demand, (b) be added to the balance of the credit line and be apportioned among and be payable with any installment payments to become due during either (i) the term of any applicable insurance policy, or (ii) the remaining term of the Credit Agreement, or (c) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. This Mortgage also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of the default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.**

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Real Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons.

**No Other Liens.** Grantor will not, without the prior written consent of Lender, create, place, or permit to be created or placed, or through any act or failure to act, acquiesce in the placing of, or allow to remain, any mortgage, voluntary or involuntary lien, whether statutory, constitutional or contractual (except for a lien for ad valorem taxes on the Real Property which are not delinquent), security interest, encumbrance or charge, against or covering the Property, or any part thereof, other than as permitted herein, regardless if same are expressly or otherwise subordinate to the lien or security interest created in this Mortgage, and should any of the foregoing become attached hereafter in any manner to any part of the Property without the prior written consent of Lender, Grantor will cause the same to be promptly discharged and released.

**EXISTING INDEBTEDNESS.** The following provisions concerning existing indebtedness (the "Existing Indebtedness") are a part of this Mortgage.

**Existing Lien.** The lien of this Mortgage securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**FULL PERFORMANCE.** If Borrower pays all the Indebtedness when due, terminates the Credit Agreement, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**DEFAULT.** Each of the following, at the option of Lender, shall constitute an event of default ("Event of Default") under this Mortgage: (a) Grantor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about Grantor's income, assets, liabilities, or any other aspects of Grantor's financial condition. (b) Grantor does not meet the repayment terms of the Credit Agreement. (c) Grantor's action or inaction adversely affects the collateral for the Credit Agreement or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of any or all persons liable on the Credit Agreement, transfer of title or sale of the dwelling, creation of a lien on the dwelling without Lender's permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Lender, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Borrower to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Borrower would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Credit Agreement or available at law or in

03-31-2000

## MORTGAGE
(Continued)

Page 3

equity.

**Expenses.** In the event of foreclosure of this Mortgage, Lender shall be entitled to recover from Grantor and Borrower actual disbursements necessarily incurred by Lender in pursuing such foreclosure.

**MISCELLANEOUS PROVISIONS.**

**Applicable Law.** This Mortgage has been delivered to Lender and accepted by Lender in the State of Ohio. This Mortgage shall be governed by and construed in accordance with the laws of the State of Ohio.

**Release of Dower.** Grantor, by executing this Mortgage, releases to Lender all of Grantor's right and expectancy of dower in the Property.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

**GRANTOR:**

X _____
RICHARD OLCZAK

X _____
KAREN L OLCZAK AKA KAREN OLCZAK

Signed, acknowledged and delivered in the presence of:

X _____
Witness   Kay Braggt

X _____
Witness   Scott Major

This instrument was prepared by Bank One, Texas, NA.

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF   Ohio           )
                          ) SS
COUNTY OF   Summit        )

The foregoing instrument was acknowledged before me this 31st day of March, 20 00 by RICHARD OLCZAK.

Given under my hand and official seal this 31st _____ day of March _____, 20 ___.

By   Debra S. Priedt          Residing at   Twinsburg, OH 44087

Notary Public in and for the State of   Ohio          My commission expires   2/9/03

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF   Ohio           )
                          ) SS
COUNTY OF   Summit        )

The foregoing instrument was acknowledged before me this 31st day of March, 20 00 by KAREN L OLCZAK AKA KAREN OLCZAK.

Given under my hand and official seal this 31st _____ day of March _____, 20 00.

By   Debra S. Priedt          Residing at   Twinsburg

Notary Public in and for the State of   Ohio          My commission expires   2/9/03

---

## SATISFACTION AND DISCHARGE OF MORTGAGE
(To be used only when obligations have been paid in full)

_____, Ohio _____, 20 ___

The conditions and obligations of this Mortgage have been complied with, and therefore this Mortgage is hereby satisfied and discharged.

Attest:                          Bank One, NA

                                 By: _____

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.27a (c) 2000 CFI ProServices, Inc. All rights reserved. [OH-G03 R3.27 F3.25 P3.37 O1650714.LN LS.OVL]



54414966
Page: 3 of 3
11/29/2000 09:29A
MO            18.00
JAMES B MCCARTHY  SUMMIT CO AUDITOR

# JPMorganChase

## CERTIFICATE OF
## JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

I, Eva Loeffler, DO HEREBY CERTIFY that I am a duly elected and qualified Assistant Secretary of JPMorgan Chase Bank, National Association, a national banking association duly organized and existing under the laws of the United States of America.

I DO HEREBY FURTHER CERTIFY, that American Fletcher National Bank and Trust Company changed its name to Bank One, Indianapolis, National Association, effective March 30, 1987.

I DO HEREBY FURTHER CERTIFY, that Bank One, Indianapolis, National Association changed its name to Bank One, Indiana, National Association, effective March 22, 1997.

I DO HEREBY FURTHER CERTIFY, that Bank One, Indiana, National Association merged with and into Bank One, National Association, effective August 22, 2002.

I DO HEREBY FURTHER CERTIFY, that Bank One, National Association merged with and into JPMorgan Chase Bank, National Association, effective November 13, 2004.

WITNESS my hand and the seal of JPMorgan Chase Bank, National Association as of this 24th day of February, 2010.

(Corporate Seal)

Eva Loeffler
Assistant Secretary

B 10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT Northern District of Ohio | | PROOF OF CLAIM |
|---|---|---|

Name of Debtor:

KAREN L AND RICHARD OLCZAK

Case Number:

14-52759-AMK13

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
The Bank of New York Mellon, f/k/a The Bank of New York, as trustee as the certification of CWABS, Inc.

Asset-Backed Certificates, Series 2003-S2 by Green Tree Servicing LLC

Name and address where notices should be sent:
Green Tree Servicing, LLC
7340 S Kyrene Rd. Recovery Dept - T120
Tempe, AZ 85283

Telephone number:  877-256-4871    email:  GT.ARM.BK@gt-cs.com

Name and address where payment should be sent (if different from above):
Green Tree Servicing, LLC
345 St. Peter St - L800R
St. Paul, MN 55102

Telephone number:  877-256-4871    email:  GT.ARM.BK@gt-cs.com

**COURT USE ONLY**

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number: _____
    *(If known)*

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**    $ 18,656.85

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**  MONEY LOANED
   (See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: 0539 _ _ _ | 3a. Debtor may have scheduled account as: Bank of America, NA (See instruction #3a) | 3b. Uniform Claim Identifier (optional): _ _ _ _ _ _ _ _ (See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff:  ☑Real Estate  ☐Motor Vehicle  ☐Other
Describe:  8772 FENTON CT, NORTHFIELD, OH 44067

Value of Property: $_____

Annual Interest Rate 0.00 % ☑Fixed or ☐Variable
(when case was filed)        CHARGED OFF SECOND MORTGAGE

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
                      $461.48

Basis for perfection:  DEED OF TRUST

Amount of Secured Claim:  $18,656.85

Amount Unsecured:  $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

Amount entitled to priority:

$_____

**EXHIBIT**

**C**

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

7. **Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. (See instruction #7, and the definition of "redacted".)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

---

8. **Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor  ☑ I am the creditor's authorized agent (Attach copy of power of attorney, if any.)  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

| | |
|---|---|
| Print Name: | Sandra Mutz |
| Title | Bankruptcy Specialist |
| Company: | Green Tree Servicing |

/s/ Sandra Mutz                    10/28/2014

Address and telephone number (if different from notice address above):        (Signature)                    (Date)

Telephone number: (877)256-4871      email: gt.arm.bk@gt-cs.com

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

Does the installment payment amount include an escrow deposit?

☑ No

☐ Yes    Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

1. **Installment payments due**

   Date last payment received by creditor    09/14/2014
                                             mm/dd/yyyy

   Number of installment payments due    (1)    30

2. **Amount of installment payments due**

   30  installments @        $    190.54

   ____ installments @        $ _____

   ____ installments @      + $ _____

   Total installment payments due as of the petition date    $    5,716.20    Copy total here ▶  (2) $    5,716.20

3. **Calculation of cure amount**

   **Add** total prepetition fees, expenses, and charges    Copy total from Part 2 here ▶    + $ _____

   **Subtract** total of unapplied funds (funds received but not credited to account)    - $    5,254.72

   **Subtract** amounts for which debtor is entitled to a refund    - $ _____

   Total amount necessary to cure default as of the petition date    (3) $    461.48

   Copy total onto Item 4 of Proof of Claim form



# BANK ONE HOME EQUITY LINE OF CREDIT℠
## AGREEMENT AND DISCLOSURE STATEMENT

**BANK≡ONE**

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

| Borrower: | RICHARD OLCZAK | Lender: | Bank One, NA |
| | KAREN L OLCZAK | | Twinsburg Banking Center, Akron |
| | 8772 FENTON COURT | | 9023 Darrow Road |
| | SAGAMORE HILLS, OH 44087 | | Twinsburg, OH 44087 |

**CREDIT LIMIT: $26,323.00**

**Date of Agreement: March 31, 2000**

**Introduction.** This BANK ONE HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through Bank One, NA. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, or any person using the Credit Line or related cards with the express or implied permission of any Borrower, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean Bank One, NA. The word "Cards" means access checks and "Card" means the VISA card that may be issued to you in connection with this Credit Line Account. NOTE: Not all Bank One banks issue Cards. You agree to the following terms and conditions:

**Promise to Pay.** You promise to pay Bank One, NA, or order, the total of all credit advances and FINANCE CHARGES and other charges, together with all costs and expenses for which you are responsible under this Agreement or under the "Mortgage" which secures your Credit Line. You will pay your Credit Line according to the payment terms set forth below. You promise to pay for all purchases and advances made by you or any authorized person, even if that person exceeds your authority. If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any one of you to pay all amounts due under this Agreement, including credit advances made to any of you. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any or all of you from responsibility under this Agreement, and the others will remain responsible.

**Term.** The term of your Credit Line will begin as of the date of the Agreement ("Opening Date") and will continue as follows: until the 15th anniversary of the Opening Date. All indebtedness under this Agreement is due and payable, if not already paid pursuant to the payment provisions below, will be due and payable at the end of this term. The Draw Period of your Credit Line will begin on a date, after the Opening Date, when this Agreement is accepted by us, following the expiration of your right to cancel the perfection of the Mortgage, and your meeting all of our other conditions and will continue as follows: Five (5) years. You may obtain credit advances during this period ("Draw Period"). You agree that we may renew or extend the Draw Period. If we extend the Draw Period, the term of your Credit Line will be extended for an additional period of time equal to the period of time for which the Draw Period is extended, but not to exceed any limit established by state or federal law. After the Draw Period ends, you will no longer be able to obtain credit advances, and you will thereafter be required to repay the balance outstanding on your Credit Line Account at the end of the Draw Period, together with interest thereon at the variable rate of interest as provided below, in substantially equal consecutive monthly installments in amounts sufficient to fully amortize the Credit Line Account over the remaining ten year period the "Repayment Period") based upon the application of the variable rate of interest then in effect. If the interest rate on the Credit Line Account increases or decreases during the Repayment Period, you will pay more or fewer monthly payments of the same amount until the outstanding balance is paid in full.

**Security Interest/Collateral.** As security for all sums due under this Agreement, available under this Agreement, or amounts advanced or incurred pursuant to the terms of this Agreement, you grant or cause to be granted to us a Mortgage on the real estate located at: 8772 FENTON COURT in SUMMIT County, State of Ohio ("Property") which you occupy as your principal residence. Our rights and your obligations as to the Property are more fully described in the Mortgage. You agree to pay certain title, appraisal and other fees customarily incurred by us in accordance with the Mortgage.

**Minimum Payment.** During the Draw Period, your Regular Payment will be based on a percentage of your outstanding balance under the Credit Line as shown below, or of $100.00, or the FINANCE CHARGE which the statement is rendered, whichever is greater. Your payments will be due monthly. In any event, if your Credit Line balance falls below $100.00, you agree to pay your balance in full.

| Range of Balances | Number of Payments | Regular Payment Calculation |
| --- | --- | --- |
| All Balances | .00 | 1.000 % of your outstanding balance |

During the Repayment Period, your Regular Payment will be based on an amortization of your balance at the start of the Repayment Period as shown below. Your payments will be due monthly. In calculating the payment amount by amortizing the balance over a certain period we will use the ANNUAL PERCENTAGE RATE in effect on the day we calculate your payment. However, if the ANNUAL PERCENTAGE RATE varies during the Repayment Period, the number of your Regular Payments will be increased or decreased to reflect the change in the ANNUAL PERCENTAGE RATE.

| Range of Balances | Amortization Period |
| --- | --- |
| All Balances | 120 payments. |

Your "Minimum Payment" will be the Regular Payment, plus any amount past due and all other charges. In addition, we have the right to require you to pay fees and charges assessed on the Credit Line Account with and in addition to the Minimum Payment.

**A change in the ANNUAL PERCENTAGE RATE** can cause the balance to be repaid more quickly or more slowly. When rates decrease, less interest is due, but more of the payment repays the principal balance. When rates increase, more interest is due, so less of the payment repays the principal balance. If this happens, we may adjust your payment as follows: Each time the ANNUAL PERCENTAGE RATE increases we will review the effect the increase has on your Credit Line Account. If the ANNUAL PERCENTAGE RATE continues or decreases within the Repayment Period, the number of your payments will be increased or decreased accordingly. You agree to continue making payments until your entire outstanding balance is paid in full. You agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement.

Under some circumstances, the Repayment Period installments will not cover the Finance Charges and "negative amortization" will occur. Negative amortization will increase the amount you owe us and reduce your equity in your property.

**Application of Payments.** Unless otherwise agreed or required by applicable law, payments and other credits will be applied in the following order: to (a) FINANCE CHARGES; (b) unpaid principal; and (c) late charges and other fees and charges. Payments will be applied on the basis of a weighted average of the scheduled payments for each Lock (as/final later) established and the Credit Line: (i) First to FINANCE CHARGES; then (ii) to the outstanding principal balance, and then (iii) to fees and charges ("fees"), if any. Any overpayments shall be applied first to the Credit Line, then to any Lock chosen at our discretion, unless you designate a particular Lock on the monthly statement remittance coupon.

**Receipt of Payments.** All payments must be made by a check, money order, or other instrument in U.S. dollars and must be mailed to us at the remittance address shown on your periodic billing statement. Payments received at that address on any business day will be credited to your Credit Line as of the date received. If we receive payments at other locations, such payments will be credited promptly to your Credit Line, but crediting may be delayed for up to five (5) days after receipt.

**Credit Limit.** This Agreement covers a revolving line of credit for Twenty Six Thousand Three Hundred Twenty Three & 00/100 Dollars ($26,323.00), which will be your "Credit Limit" under this Agreement. During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights. You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you. We may at our option refuse credit advances for so long as the balance due exceeds your Credit Limit. Any credit advances in excess of your Credit Limit other than accrued but unpaid interest and expenditures made by us under the Mortgage as provided for in the Mortgage shall not be secured by the Mortgage covering your principal dwelling.

**Charge to Your Credit Line.** We may charge your Credit Line to pay fees and costs that you are obligated to pay under this Agreement, under

_____DEFINITIONS_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

_____INFORMATION_____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system
(www.pacer.psc.uscourts.gov ) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq* ), and any applicable orders of the bankruptcy court.

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2).

| | | | |
|---|---|---|---|
| Name of debtor: | KAREN L OLCZAK and RICHARD OLCZAK | Case number: | 14-52759-AMK13 |
| Name of creditor: | The Bank of New York Mellon , f/k/a The Bank of New York, as trustee as the certificateholder of CWABS, Inc. Asset-Backed Certificates, Series 2003-S2  by Green Tree Servicing LLC | Last four digits of any number you use to identify the debtor's account : | 0  5  3  9 |

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

1. Principal due          (1) $     $18,656.85

2. Interest due

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| ____ % | ____ | ____ | $ ____ |
| ____ % | ____ | ____ | $ ____ |
| ____ % | ____ | ____ | $ ____ |

Total interest due as of the petition date      Copy total here ▶ (2) + $ ____

3. Total principal and interest due       (3) $     $18,656.85

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | Amount |
|---|---|---|
| 1. Late charges | ____ | (1) $ ____ |
| 2. Non-sufficient funds (NSF) fees | ____ | (2) $ ____ |
| 3. Attorney's fees | ____ | (3) $ ____ |
| 4. Filing fees and court costs | ____ | (4) $ ____ |
| 5. Advertisement costs | ____ | (5) $ ____ |
| 6. Sheriff/auctioneer fees | ____ | (6) $ ____ |
| 7. Title costs | ____ | (7) $ ____ |
| 8. Recording fees | ____ | (8) $ ____ |
| 9. Appraisal/broker's price opinion fees | ____ | (9) $ ____ |
| 10. Property inspection fees | ____ | (10) $ ____ |
| 11. Tax advances (non-escrow) | ____ | (11) $ ____ |
| 12. Insurance advances (non-escrow) | ____ | (12) $ ____ |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | ____ | (13) $ ____ |
| 14. Property preservation expenses. Specify:_____ | ____ | (14) $ ____ |
| 15. Other. Specify:_____ | ____ | (15) $ ____ |
| 16. Other. Specify:_____ | ____ | (16) $ ____ |
| 17. Other. Specify:_____ | ____ | (17) +$ ____ |

18. Total prepetition fees, expenses, and charges. Add all of the amounts listed above.      (18) $ ____



the Mortgage or under any other document related to your Credit Line. In addition we may charge your Credit Line for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below or as described in the Mortgage. We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your Property. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your Property. If you do not pay your delinquent taxes, we may charge your Credit Line and pay the delinquent taxes. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph. If you have elected to purchase credit life insurance, we may charge your Credit Line each month for credit life insurance premiums as they become due. Each month the insurance charge that will be added to the principal balance on your Account will be calculated by multiplying the average daily balance by the premium option you have selected. The premium will be included as a regular purchase and will be added to the principal balance upon which we will earn interest at the rate set out herein. We have the right to change the premium rate by giving you notice of the action thirty (30) days prior to the effective date. The new rate will apply only to the charges for insurance made after the date of the rate change.

Credit Advances. After the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows:

   (a) Writing a preprinted "Credit Line Check" that we will supply to you.

   (b) Requesting a credit advance in person at any of our authorized locations.

   (c) Using your Card to make purchases of goods and services from businesses that accept the Card, to obtain cash advances from all financial institutions and automated teller machines that accept the Card.

If your Credit Line Account is a joint account, you and the joint holder agree that each is the agent for the other account holder for purposes of requesting Credit Limit increases.

Credit Line Checks. Your Credit Line Account may be accessed by special Checks provided by us. You will receive those Credit Line Checks imprinted with your account number and may use them in the same manner as a regular checking account. The amount of each Check will be treated as credit advances when posted to your Credit Line Account. You agree not to use the proceeds of any credit advance for the purpose of refinancing the Property securing this Agreement. You may make an advance to the Credit Line to pay off the entire outstanding balance of any Lock during the term of this Agreement. Except as otherwise provided in this Agreement, checks will be subject to all laws normally applicable to negotiable instruments governed by the Ohio Uniform Commercial Code.

Limitations on the Use of Credit Line Checks. We reserve the right not to honor Credit Line Checks in the following circumstances:

   (a) Your Credit Limit has been or would be exceeded by paying the Credit Line Check.

   (b) Your Credit Line Check is post-dated. If a post-dated Credit Line Check is paid and as a result any other check is returned or not paid, we are not responsible.

   (c) Your Credit Line Checks or Card have been reported lost or stolen.

   (d) Your Credit Line Check is not signed by you.

   (e) Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the Credit Line Check.

If we pay your Credit Line Check under those conditions, you must repay us, subject to applicable laws, for the amount of the Credit Line Check. The Credit Line Check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a Credit Line Check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. We may choose not to return Credit Line Checks along with your periodic billing statements; however, we will make available to you, upon request, any paid Credit Line Check or a copy thereof for at least six years after the date of the statement reflecting payment of the Credit Line Check. We do not "certify" Credit Line Checks drawn on your Credit Line. We have no responsibility for the refusal of any merchants, banks or others to honor the Credit Line Check or other access devices, or for any goods or services purchased through the use of your Credit Line Account.

Lost Credit Line Checks or Card. If you lose your Credit Line Checks and/or Card or someone is using them without your permission, you agree to let us know immediately by calling us at (800) 477-2265. You can also notify us at our address shown at the beginning of this Agreement.

Future Credit Line Features. Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with the Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services.

Insurance. You must obtain insurance on this Property securing this Agreement that is reasonably satisfactory to us. You agree to obtain and maintain adequate insurance against fire, flood and other reasonable risks to the Property, with standard mortgagee clause in our favor, as our interest may appear, as we require. You may obtain property insurance through any agent, broker or insurance company of your choice, which is licensed to do business in the state where the real estate is located but we reserve the right to reject any insurance company for reasonable cause. Subject to applicable law, if you fail to obtain or maintain insurance as required in the Mortgage, we may purchase insurance to protect our own interest, and the premium to your Credit Line, pursue any other remedies available to us, or do any one or more of these things.

Right of Setoff. Unless a lien would prohibit by law or would render a nontaxable account taxable; you grant to us a security interest in, and hereby assign, convey, deliver, pledge, and transfer to us all right, title and interest in and to, your accounts with us (whether checking, savings, or any other account, including without limitation all accounts held jointly with someone else and all accounts you may open in the future. You authorize us, to the extent permitted by applicable law, to charge or setoff all sums owing on this Agreement against any and all such accounts.

Periodic Statements. If you have a balance owing on your Credit Line Account or have any account activity, we will send you a periodic statement. It will show, among other things; credit advances, FINANCE CHARGES, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due.

When FINANCE CHARGES Begin to Accrue. Periodic FINANCE CHARGES for credit advances under your Credit Line will begin to accrue on the date credit advances are posted to your Credit Line. There is no "free ride period" which would allow you to avoid a FINANCE CHARGE on your Credit Line credit advances.

Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed. FINANCE CHARGES will be incurred on the Daily Principal Balances of all credit advances made hereunder from the date such transactions are posted to the Credit Line Account until payment in full is entered to the Account. FINANCE CHARGES are determined by multiplying your Daily Principal Balances during the statement period by the daily Periodic Rate as described below. The Daily Principal Balance is the amount of principal (excluding unpaid FINANCE CHARGES and fees) outstanding at the end of each day during the statement period.

Method of Determining the Amount of FINANCE CHARGE. Any FINANCE CHARGE is determined by applying the "Periodic Rate" to the balance described above.

Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE. The daily Periodic Rate used in calculating the FINANCE CHARGE will be a variable rate. The daily Periodic Rate may vary from month to month. The daily Periodic Rate shall be the index plus 1.280% divided by 365. We will determine the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE as follows. We start with an index which is the average weekly BANK PRIME LOAN RATE as published by Board of Governors of The Federal Reserve System in Statistical Release H.15 for the week which includes the 15th day of the month (the "Index"). To determine the Periodic Rate that will apply to your account, we add a margin to the value of the Index, then divide the value by the number of days in a year (daily). To obtain ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by the number of days in a year (daily). This result is the ANNUAL PERCENTAGE RATE. The ANNUAL PERCENTAGE RATE includes only interest and no other costs.

The Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE will increase or decrease as the Index increases or decreases from time to time. An increase in the Index will result in an increase in the daily Periodic Rate which may increase the minimum payment due on the Credit Line Account. Adjustments to the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE resulting from changes in the Index will take effect month to month. In no event will the ANNUAL PERCENTAGE RATE be more than the lesser of 25.000% or the maximum rate allowed by applicable law. Today the Index is 0.750% per annum, and therefore the initial Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line are as stated below:

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 1.250 % | 10.000 % | 0.02740 % |

Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed portion of the Credit Line.

**Conversion Option.** This Agreement contains an option to convert the interest rate from a variable rate (with interest rate limits) to a fixed rate as calculated below. The following information is representative of conversion features currently offered by us.

**ANNUAL PERCENTAGE RATE Increase.** Your ANNUAL PERCENTAGE RATE may increase if you exercise this option to convert to a fixed rate.

**Conversion Periods.** You can exercise the option to convert to a fixed rate only during the following period or periods: At any time during the Draw Period, with our written consent, any one of you may convert the repayment schedule for either the entire outstanding balance on the Credit Line Account or any portion thereof for a term not to exceed ten (10) years and at a fixed rate, dependent upon [the term chosen by you (a "Lock"). You may have up to five (5) Locks outstanding at any one time but may not make additional advances to any one Lock once established. The total outstanding balance in any Lock will not be subject to the "Credit Advances" and "Minimum Payment" sections of this Agreement. Instead, when determine the payment amount that would be required to pay off the balance in that Lock in substantially equal payments over the term of the fixed rate applicable to that Lock. Therefore, your minimum payment due each month will be the sum of the fixed payment amount for each Lock plus the minimum payment amount for the balance of your Account which has not been designated as a Lock (the "Credit Line"), calculated using the formula set forth in the "Minimum Payment" section of this Agreement. Additional payments in any Lock may be made at any time but shall not affect your obligation to pay succeeding Lock payments as long as any amount is still owing on the Lock. Any payment made upon your outstanding principal balance in any Lock will be available on the Credit Line, for you to draw against upon the posting of such payment.

**Conversion Fees.** You will be required to pay the following fees at the time of conversion to a fixed rate: We may charge you $60.00 for each Lock that we set up at your request.

**Rate Determination.** The fixed rate will be determined as follows: We shall establish the fixed rate and term when each Lock is opened by you based upon the term and rate available for a comparable Home Equity Loan offered by us at that time based upon a like loan in value ratio or upon a rate and term otherwise agreed to. A complete disclosure of the terms of the Lock shall be provided to you before the Lock is established which shall apply whether or not you have signed and returned the Lock disclosure.

**Conversion Rules.** You can convert to a fixed rate only during the period or periods described above. In addition, the following rules apply to the conversion option under this Agreement: If you repay a Lock in full before fifty percent (50%) of the scheduled payments are due, you will pay a prepayment charge of one percent (1%) of the original Lock balance, in addition to all interest, other fees, and amounts due under this Agreement.

**Conditions Under Which Other Charges May be Imposed.** To the extent permitted by applicable law, we will charge and you agree to pay all the other fees and charges related to your Credit Line as set forth below:

**Annual Fee.** A nonrefundable Annual Fee of $50.00 may be charged to your Credit Line at the following time: The Annual Fee is payable in advance for each year, and may be charged to the Account annually. No refund of any part of the Annual Fee will be made in the event of cancellation of the Account for any reason.

**Returned Items.** You may be charged $25.00 if you pay your Credit Line obligations with a check, draft, or other item that is dishonored for any reason, unless applicable law requires a lower charge or prohibits any charge.

**Fee to Stop Payment.** Your Credit Line Account may be charged $25.00 when you request a stop payment of a Check drawn on your Account.

**Overlimit Charge.** Your Credit Line Account may be charged $25.00 in the event you incur charges in amounts exceeding your Credit Limit, and for such credit advances submitted against the Credit Line Account which we refuse to honor because such advance, if paid, would create a balance due in excess of your Credit Limit. This includes writing a Credit Line Check in excess of your available balance.

**Late Charges.** Your payment will be late if it is not received by us within 10 days of the "Payment Due Date" shown on your periodic statement. If your payment is late we may charge you $25.00.

**Credit Line Check Printing Charge.** Your Credit Line Account may be charged for check printing. This charge may vary.

**Scheduled Fee Changes. Account Closing Fee.** Your Credit Line Account may be charged $260.00 if you close or terminate your Credit Line Account within two (2) years of the Loan Date shown above.

**Other Charges.** Your Credit Line Account may be charged the following other charges: Delinquent Account Check Charge and Over Limit Check Charge. We may charge you a fee for the return of a check because you are delinquent or in default in any respect concerning the Credit Line Account. We may also charge you a fee for a Credit Line Check which causes your Credit Line Account to exceed your Credit Limit. The amount of each of these other charges is: $25.00.

**Lender's Rights.**

**(a) Termination and Acceleration.** If any of the following happen, we may, at our option (i) terminate your Credit Line Account and require you to pay us the entire outstanding balance in one payment, and charge you certain fees, (ii) temporarily or permanently prohibit any additional extensions of credit, or (iii) temporarily or permanently reduce the Credit Line.

(1) You commit fraud or make a material misrepresentation at any time in connection with this Credit Line Account. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition.

(2) You do not meet the repayment terms of this Credit Line Account.

(3) Your action or inaction adversely affects the Property or our rights in the Property. This can include, for example, failure to maintain required insurance, waste or destructive use of the Property, failure to pay taxes, death of any or all persons liable on the account, transfer of title or sale of the Property, creation of a senior lien on the Property without our permission, foreclosure by the holder of another lien or the use of funds in the dwelling for prohibited purposes.

**(b) Suspension or Reduction.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

(1) The value of your Property declines significantly below the Property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the Credit Limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

(2) We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances.

(3) You are in default under any material obligations of this Credit Line Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under Termination and Acceleration, obligations to pay fees and charges, obligations and limitations on the Credit Line, obligations in credit advances, obligations concerning maintenance or use of the Property or proceeds, obligations to pay and perform the terms of the Mortgage or any other mortgage or lease of the Property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any comaker.

(4) We are precluded by government action from imposing the ANNUAL PERCENTAGE RATE provided for under this Agreement.

(5) The priority of our Mortgage is adversely affected by government action to the extent that the value of the Mortgage is less than 120 percent of the Credit Line Limit.

(6) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice.

**(c) Reinstatement.** In order to reinstate the Agreement, you must send us a written request to that effect. We will only reinstate the Credit Line Account if we determine to our satisfaction that the conditions or reason which caused us to prohibit Credit Advances or to reduce the Credit Limit either no longer exists or has been corrected. If an appraisal or title report is required to make such determination, we may charge you for any such fee(s), which will be billed to your Account as a credit advance.

**(d) Change in Terms.** We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the

change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems). If the index is no longer available, we will choose a new index and margin. The new index will have an historical movement substantially similar to the original index, and the new index and margin will result in an ANNUAL PERCENTAGE RATE that is substantially similar to the rate in effect at the time the original index become unavailable. We may prohibit additional extensions of credit or reduce your Credit Limit during any period in which the maximum ANNUAL PERCENTAGE RATE under your Credit Line Account is reached.

(e) Access Devices. If your Credit Line is suspended or terminated, you must immediately return to us all Credit Line Checks and any other access devices. Any use of Credit Line Checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of Credit Line Checks or other Credit Line access devices not returned to us.

Delay in Enforcement. We may except late payments, partial payments or payments marked "payment in full" without losing any of our rights under this Agreement. The waiver of any of our rights and remedies at any time will not mean that we have given up or lost the right to exercise any of our rights and remedies at any later time. We may delay in enforcing any of our rights and remedies under this Agreement without losing them. Failure by us to assert any of our rights shall not waive such rights. We may also take any collection action allowed by law.

Cancellation. If you cancel your right to credit advances under this Agreement, you must notify us in writing and return all Credit Line Checks and any other access devices to us. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement. If more than one person has signed this Agreement, cancellation of the Credit Line Account by one signer of the Agreement shall cancel the Credit Line Account for all persons on the Account. Use of the Credit Line Account after termination or notice of cancellation is fraudulent and you may be subject to legal proceedings.

Prepayment. You may prepay all or any amount owing under this Credit Line at any time without penalty except as provided in this Agreement and except that you will be entitled to receive all accrued FINANCE CHARGES, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Credit Line.

Notices. All notices will be sent to your address as shown in this Agreement. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

Credit Information and Related Matters. You authorize us to release information on credit bureaus, merchants, and other financial institutions about the status and history of your Credit Line Account. You agree that, upon our request, you will provide us with a current financial statement, a new credit application, or both, on forms provided by us. You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition. We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense.

Transfer or Assignment. Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account to another lender, entity, or person, and to assign our rights under this Agreement and the Mortgage. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives.

Governing Law. This Agreement and its interpretation will be governed by federal law and by the laws of the State of Ohio. If there is any conflict between any of the terms and conditions of this Agreement and applicable federal or state law, this Agreement will be considered changed to the extent necessary to comply with the law.

Interpretation. The names given to paragraphs or sections in this Agreement are for convenience purposes only. They are not to be used to interpret or define the provisions of this Agreement. You agree that this Agreement, together with the Mortgage, is the best evidence of your agreements with us. If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court may enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Mortgage, or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic billing statement is the best evidence of your obligation to pay.

IMPORTANT INFORMATION SHARING NOTICE. Lender shares information regarding transactions and experiences about you and your account with other BANK ONE CORPORATION ("BANK ONE") companies. We may also share other information such as employment and credit history, information on your application, information involving other BANK ONE relationships and any other information among BANK ONE companies. You have the right to prohibit sharing of the other information to the extent permitted by the Fair Credit Reporting Act ("FCRA"). If you would like to exercise this right, please write to us at BANK ONE, FCRA Opt-Out, P.O. Box 182794, Columbus, Ohio 43218-2793, and include your name, social security number, account number, telephone number, and sign and date your correspondence. If your account is a joint account, joint account owner that desires to opt out must provide the above information including their signature. You may receive additional notices of your right to opt out, but you only need to respond once to exercise this right.

Acknowledgment. You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a copy of this Agreement, including the Fair Credit Billing Notice and the early home equity line of credit application disclosures, in addition to the handbook entitled "When Your Home is On the Line: What You Should Know About Home Equity Lines of Credit," given with the application.

Entire Agreement. This Agreement is intended by Lender and you as a final expression of the Agreement and as a complete and exclusive statement of its terms, there being no conditions to the enforceability of this Agreement. This Agreement may not be supplemented or modified except in writing.

This Agreement is dated March 31, 2000.

BORROWER:

X _____      X _____
RICHARD OLCZAK                KAREN L OLCZAK

Effective Disbursement Date: The first business day after April 6, 2000.

## NOTICE TO COSIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase that amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of YOUR credit record.

This notice is not the contract that makes you liable for the debt.

Variable Rate, Line of Credit.    LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.27a © 2000 CFI ProServices, Inc. All rights reserved. [OH-D18 E3.27 F3.27b F3.27 O10007114JN LO.OVL]

 **CHASE**

SEPTEMBER 13, 2012

RICHARD OLCZAK, KAREN L. OLCZAK
8772 FENTON COURT, SAGAMORE HILLS,
OHIO 44067

Property Address: 8772 FENTON COURT
SAGAMORE HILLS, OHIO 44067

RE: Home Equity Loan Modification Program

Dear RICHARD OLCZAK, KAREN L. OLCZAK

Congratulations! You have been approved for a Modification. Enclosed with this letter is your final Modification Agreement containing your modified home equity mortgage loan terms that are applicable for the reminder of your loan.

How to Complete Your Final Modification:

**"STEP 1: SIGN AND RETURN THE ENCLOSED AGREEMENT BY THE DUE DATE"**

To accept your modification, <u>you must sign and return both copies</u> of the Modification Agreement to us in the enclosed, pre-paid envelope by SEPTEMBER 23, 2012. There is an extra copy for your convenience. If the Modification Agreement has notary provisions at the end, you must sign both copies before a notary public and return the notarized copies to us. We encourage you to make a copy of all documents for your records. If you do not send the signed (and notarized, if applicable) copy of the Modification Agreement by the above date, you may lose your opportunity to get a modification. If you have questions or concerns about the enclosed agreement, you must contact us as soon as possible if you still wish to be considered for this program and have your loan modified.

All signature dates must be the same date. If they are not, we will not be able to complete the modification, and we will be required to ask you to sign the documents again.

Do not make any alterations to the Modification Agreement. If you do not agree with the document terms, please call us to discuss your concerns.

**"OTHER IMPORTANT INFORMATION"**

Monthly Statements. You will soon begin to receive new monthly statements in the amount of your modified payment. If you have not received a statement prior to the due date of your first modified payment, make that payment to CHASE PAYMENT PROCESSING, P.O. BOX 78420, PHOENIX, AZ 85062-8420.

We look forward to hearing from you no later than SEPTEMBER 23, 2012.

Sincerely,

JP MORGAN CHASE BANK, N.A.

*Attachments: Summary of Your Modified Mortgage; Two copies of the Modification Agreement, Flood form (if applicable, and) Document Correction Agreement.*

 First American Mortgage Services

Page 1



### Important Information

To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this statement is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation.

---

**SUMMARY.** Here is a summary of your modified mortgage.

**NEW PRINCIPAL BALANCE.** Any past due amounts as of the end of the trial period, if applicable, including unpaid interest and certain assessments paid on your behalf to a third party, will be added to your home equity mortgage loan balance to the extent permitted by applicable law.

**INTEREST RATE.** The interest rate on your modified loan will be adjusted as noted in the attached Modification Agreement in Section 3.C.

**TERM EXTENSION.** To reduce your mortgage payment, we will extend the term of your home equity mortgage. This means we will spread your payments over a longer period. If your Property is located in a Special Flood Hazard Area as part of this extension, we are required by law to send you another Flood Notice confirming your Property's flood status. We are required to do so even though we periodically check to ensure that you have flood insurance. As a result, if you receive this additional Notice from us, all you need to do is to immediately sign the Notice, as required, and return it to us. Also, if you have private mortgage insurance on your loan, any automatic cancellation provided for under applicable law will be based on this new extended term.

**PAYMENT SCHEDULE.** The enclosed Modification Agreement includes a payment schedule in Section 3.C. showing your payment plan for life of your modified home equity mortgage loan after the trial period.

**FEES.** There are no fees or other charges for this modification.

**REPRESENTATIONS.** Please read the enclosed Modification Agreement carefully. If you have any questions, please contact us at 866-378-5896.



First American Mortgage Services

Page 2



# DOCUMENT CORRECTION AGREEMENT
("Agreement")

**AGREEMENT TO CORRECT MISSTATED DOCUMENTS AND TO PROVIDE ADDITIONAL DOCUMENTATION OR FEES:** In consideration of Chase Home Finance LLC ("Chase") modifying the Loan (the "Modification") as requested by the undersigned ("Borrower"), and regardless of the reason for any loss, misplacement, or inaccuracy in the modification agreement or any other document prepared in connection with the Modification, Borrower agrees as follows: if any document is lost, misplaced, misstated or inaccurately reflects the true and correct terms and conditions of the Modification, upon request of Chase, Borrower will comply with Chase's request to execute, acknowledge, and deliver to Chase any documentation ("Replacement Documents") Chase deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). Borrower agrees to deliver the Replacement Documents within ten (10) days after receipt by Borrower of a written request for such replacement. Borrower also agrees that upon request Borrower will pay to Chase any additional sum ("Fee") previously disclosed to Borrower as a cost or fee associated with the Modification, which, for whatever reason, was not previously collected.

**REQUEST BY CHASE:** Any request under this Agreement made by Chase, (including assignees and persons acting on behalf of Chase), shall be *prima facie* evidence of the necessity for same. A written statement addressed to Borrower, first class postage prepaid, at the mailing address indicated in Chase's records shall be considered conclusive evidence of receipt by Borrower of the request for Replacement Documents.

**BORROWER LIABILITY:** If Borrower fails or refuses to execute, acknowledge, and deliver the Replacement Documents or Fee to Chase more than (10) days after being requested to do so by Chase, Borrower shall be liable for any and all loss or damage which Chase reasonably sustains thereby, including, but not limited to all reasonable attorneys' fees and costs incurred by Chase. In addition, Chase may elect to declare the Modification null and void in which case the Loan shall be payable at the rate and on the terms as existed prior to the Modification. Any funds received by Chase in conjunction with the Modification shall be retained by Chase and applied to the Loan as determined by Chase in its discretion.

_(signature)_
RICHARD OLCZAK                                    9-19-12
                                                    Date

_(signature)_
KAREN L. OLCZAK                                  9-19-12
                                                    Date

_____
                                                    Date

_____
                                                    Date

_____
                                                    Date

_____
                                                    Date

First American Mortgage Services                Page 10

RECORDATION REQUESTED BY:

Bank One, NA
8023 Darrow Road
Twinsburg, OH 44087

WHEN RECORDED MAIL TO:

Regional Loan Servicing Center
P.O. BOX 11606
Lexington, KY 40576-1606

DEED OF TRUST / MORTGAGE



54414966
Page 1 of 3
05/25/2000 09:52A
JAMES B MCCARTHY SUMMIT CO AUDITOR

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

# BANK ONE

## OPEN - END MORTGAGE

The Maximum Amount of Loan Indebtedness secured by this Open-End Mortgage is $26,323.00. The words "Maximum Amount of Loan Indebtedness" as used in this paragraph mean the maximum unpaid balance of loan advances made under the Note which may be outstanding at any one time. The Maximum Amount of Loan Indebtedness does not include any (a) interest, (b) taxes, (c) assessments, (d) insurance premiums, or (e) costs incurred for the protection of the Property. Grantor and Lender intend that, in addition to any other indebtedness or obligations secured hereby, this Mortgage shall secure indebtedness arising from loan advances made by Lender after this Mortgage is delivered to the recorder for record.

THIS MORTGAGE IS MADE THIS MARCH 31, 2000, between RICHARD OLCZAK and KAREN L OLCZAK AKA KAREN OLCZAK, WITH VESTING AS FOLLOWS: RICHARD OLCZAK and KAREN OLCZAK AKA KAREN L OLCZAK, HUSBAND and WIFE, whose address is 8772 FENTON COURT, SAGAMORE HILLS, OH 44067 (referred to below as "Grantor"); and Bank One, NA, whose address is 8023 Darrow Road, Twinsburg, OH 44087 (referred to below as "Lender").

GRANT OF MORTGAGE. For valuable consideration, Grantor grants, mortgages and conveys to Lender, with mortgage covenants and upon the statutory condition, all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, all tenant security deposits, utility deposits and all proceeds (including without limitation premium refunds) of each policy of insurance relating to any of the Improvements, the Personal Property or the Real Property; all rents, issues, profits, revenues, royalties or other benefits of the Improvements, the Personal Property or the Real Property; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, located in SUMMIT County, State of Ohio (the "Real Property"):

SITUATED IN THE TOWNSHIP OF SAGAMORE HILL, COUNTY OF SUMMIT, STATE OF OHIO, AND BEING KNOWN AS SUBLOT 48 IN TRAILS CROSSING AT EATON ESTATES CLUSTER DEVELOPMENT, RECORDED IN PLAT RECEPTION NUMBER 54311903 OF SUMMIT COUNTY RECORDS. Parcel ID Number: 4504855

The Real Property or its address is commonly known as 8772 FENTON COURT, SAGAMORE HILLS, OH 44067.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

DEFINITIONS. The following words shall have the following meanings when used in this Mortgage. Terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code. All references to dollar amounts shall mean amounts in lawful money of the United States of America.

Borrower. The word "Borrower" means each and every person or entity signing the Note, including without limitation RICHARD OLCZAK and KAREN L OLCZAK.

Credit Agreement. The words "Credit Agreement" mean the revolving line of credit agreement dated March 31, 2000, between Lender and Borrower with a maximum credit limit of $26,323.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for the Credit Agreement.

Existing Indebtedness. The words "Existing Indebtedness" mean the indebtedness described below in the Existing Indebtedness section of this Mortgage.

Grantor. The word "Grantor" means any and all persons and entities executing this Mortgage, including without limitation all Grantors named above. The Grantor is the mortgagor under this Mortgage. Any Grantor who signs this Mortgage, but does not sign the Credit Agreement, is signing this Mortgage only to grant and convey that Grantor's interest in the Real Property and to grant a security interest in Grantor's interest in the Rents and Personal Property to Lender and is not personally liable under the Credit Agreement except as otherwise provided by contract or law.

Guarantor. The word "Guarantor" means and includes without limitation, each and all of the guarantors, sureties, and accommodation parties in connection with the Indebtedness.

Indebtedness. The word "Indebtedness" means all principal and interest payable under the Credit Agreement and any amounts expended or advanced by Lender to discharge obligations of Grantor or expenses incurred by Lender to enforce obligations of Grantor under this Mortgage, together with interest on such amounts as provided in this Mortgage. Specifically, without limitation, this Mortgage secures a revolving line of credit, which obligates Lender, pursuant to a contractual commitment, to make advances to Borrower conditioned upon Borrower complying with the terms of the Credit Agreement. Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Grantor and Lender that this Mortgage secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided above and any intermediate balance.

Mortgage. The word "Mortgage" means this Mortgage between Grantor and Lender, and includes without limitation all assignments and security interest provisions relating to the Personal Property and Rents.

Personal Property. The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to, or located on, the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

Property. The word "Property" means collectively the Real Property and the Personal Property.

Real Property. The words "Real Property" mean the property, interests and rights described above in the "Grant of Mortgage" section.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ALL OBLIGATIONS OF GRANTOR UNDER THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS: Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Mortgage, Borrower shall pay to Lender all Indebtedness secured by this



54414966
Page: 2 of 3
03/16/2008 09:29A
RD 19.00

JAMES B MCCARTHY SUMMIT CO AUDITOR

Page

Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all their respective obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor and Borrower agree that Grantor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until in default, Grantor may remain in possession and control of and operate and manage the Real Property and collect the Rents.

Duty to Maintain. Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Nuisance, Waste. Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), soil, gravel or rock products without the prior written consent of Lender.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at its option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without the Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest therein, whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of Real Property interest. If any Grantor is a corporation, partnership or limited liability company, "sale or transfer" also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Ohio law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are a part of this Mortgage.

Payment. Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Mortgage, except for the lien of taxes and assessments not due.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage.

Maintenance of Insurance. Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property at any time become located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance for the full unpaid principal balance of the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

Application of Proceeds. Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at its election, apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property.

**EXPENDITURES BY LENDER.** If Grantor fails to comply with any provision of this Mortgage, including any obligation to maintain Existing Indebtedness in good standing as required below, or if any action or proceeding is commenced that would materially affect Lender's interests in the Property, Lender on Grantor's behalf may, but shall not be required to, take any action that Lender deems appropriate. Any amount that Lender expends in so doing will bear interest at the rate provided for in the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses, at Lender's option, will (a) be payable on demand, (b) be added to the balance of the credit line and be apportioned among and be payable with any installment payments to become due during either (i) the term of any applicable insurance policy, or (ii) the remaining term of the Credit Agreement, or (c) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. This Mortgage also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of the default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.**

Title. Grantor warrants that: (a) Grantor holds good and marketable title of record to the Real Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

Defense of Title. Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons.

No Other Liens. Grantor will not, without the prior written consent of Lender, create, place, or permit to be created or placed, or through any act or failure to act, acquiesce in the placing of, or allow to remain, any mortgage, voluntary or involuntary lien, whether statutory, constitutional or contractual (except for a lien for ad valorem taxes on the Real Property which are not delinquent), security interest, encumbrance or charge, against or covering the Property, or any part thereof, other than as permitted herein, regardless if same are expressly or otherwise subordinate to the lien or security interest created in this Mortgage, and should any of the foregoing become attached hereafter in any manner to any part of the Property without the prior written consent of Lender, Grantor will cause the same to be promptly discharged and released.

**EXISTING INDEBTEDNESS.** The following provisions concerning existing indebtedness (the "Existing Indebtedness") are a part of this Mortgage.

Existing Lien. The lien of this Mortgage securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, terminates the Credit Agreement, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**DEFAULT.** Each of the following, at the option of Lender, shall constitute an event of default ("Event of Default") under this Mortgage: (a) Grantor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about Grantor's income, assets, liabilities, or any other aspects of Grantor's financial condition. (b) Grantor does not meet the repayment terms of the Credit Agreement. (c) Grantor's action or inaction adversely affects the collateral for the Credit Agreement or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the Credit Agreement, transfer of title or sale of the dwelling, creation of a lien on the dwelling without Lender's permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Lender, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

Accelerate Indebtedness. Lender shall have the right at its option without notice to Borrower to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Borrower would be required to pay.

UCC Remedies. With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

Judicial Foreclosure. Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

Deficiency Judgment. If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

Other Remedies. Lender shall have all other rights and remedies provided in this Mortgage or the Credit Agreement or available at law or in

equity.

Expenses. In the event of foreclosure of this Mortgage, Lender shall be entitled to recover from Grantor and Borrower actual disbursements necessarily incurred by Lender in pursuing such foreclosure.

MISCELLANEOUS PROVISIONS.

Applicable Law. This Mortgage has been delivered to Lender and accepted by Lender in the State of Ohio. This Mortgage shall be governed by and construed in accordance with the laws of the State of Ohio.

Release of Dower. Grantor, by executing this Mortgage, releases to Lender all of Grantor's right and expectancy of dower in the Property.

Time is of the Essence. Time is of the essence in the performance of this Mortgage.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

X _____     X _____
   RICHARD OLCZAK                KAREN L OLCZAK AKA KAREN OLCZAK

Signed, acknowledged and delivered in the presence of:

X _____
   Witness

X _____
   Witness   Scott Trojsi

This instrument was prepared by Bank One, Texas, NA.

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF __Ohio__ )
                    ) SS
COUNTY OF __Summit__ )

The foregoing instrument was acknowledged before me this 31st day of March, 20 00 by RICHARD OLCZAK.

Given under my hand and official seal this 31st day of March, 20___.

By __Debra S. Fiedel__                        Residing at __Twinsburg, OH 44087__
Notary Public in and for the State of __Ohio__     My commission expires __2/9/03__

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF __Ohio__ )
                    ) SS
COUNTY OF __Summit__ )

The foregoing instrument was acknowledged before me this 31st day of March, 20 00 by KAREN L OLCZAK AKA KAREN OLCZAK.

Given under my hand and official seal this 31st day of March, 20___.

By __Debra S. Fiedel__                        Residing at __Twinsburg__
Notary Public in and for the State of __Ohio__     My commission expires __2/9/03__

## SATISFACTION AND DISCHARGE OF MORTGAGE
### (To be used only when obligations have been paid in full)

_____, Ohio _____, 20_____

The conditions and obligations of this Mortgage have been complied with, and therefore this Mortgage is hereby satisfied and discharged.

Attest: _____          Bank One, NA

                                         By: _____

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.27a (c) 2000 CFI ProServices, Inc. All rights reserved. [OH-G03 E3.27 F3.28 P0.27 01660710.LN (6.0V)]

```
54414966
Page: 3 of 3
04/26/2000 09:28A
JAMES B MCCARTHY SUMMIT CO AUDITOR  MO  16.00
```

When Recorded Return To:
Green Tree Servicing LLC
Attn: Document Custody, T326
7360 South Kyrene Rd
Tempe, AZ 85283



OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
2010-0671733 08/05/10 02:30 PM
1 OF 1
RAMIREZP

# LIMITED POWER OF ATTORNEY

| TO | GREEN TREE SERVICING LLC |
|---|---|
| FROM | Countrywide Home Loans, Inc. |
| DATED | 7/30/10 |
| DEAL | Bank of America/Countrywide Chargeoff/Deficiency Flow Deal |

## SPECIAL AND LIMITED POWER OF ATTORNEY
### IN FAVOR OF GREEN TREE SERVICING LLC

KNOW ALL MEN BY THESE PRESENTS:

Reference is hereby made to certain defaulted accounts (the "Accounts"), the collection obligations of which have been assigned to Green Tree Servicing LLC pursuant to that General Services Agreement dated as of December 11, 2009 (the "Agreement") between Green Tree Servicing LLC and Countrywide Home Loans, Inc. ("Servicer").

The undersigned does hereby appoint Green Tree Servicing LLC, and the following of Green Tree's affiliates: Green Tree-AL LLC, Green Tree Credit LLC, Green Tree Loan Company, Green Tree Consumer Discount Company (individually and collectively, "Green Tree") its true and lawful attorney-in-fact, but only for the purpose set forth herein, and the undersigned hereby authorizes and empowers Green Tree to take the following actions, to the extent authorized by the Agreement, for and in the name of Servicer:

(a) with respect to the Accounts, to make, execute, acknowledge, swear to, record, publish, file, procure or repair any agreement, document, certificate, instrument, file or other paper that pertains to the Accounts, including, without limitation, to endorse checks and promissory notes, to execute assignments and releases of loans or liens and other instruments, documents and papers, to possess and procure all lender, collateral, correspondent or business files which pertain to the Accounts, to dispense with the same and the proceeds thereof all in accordance with and subject to the terms of the Agreement; and

(b) with respect to the Accounts, to endorse, execute or deliver any and all documents or instruments necessary to foreclose on any loan or lien, to maintain the lien created by any debt or security instrument, or any portion thereof, and to execute upon or newly create any and all modifications, forbearance agreements, waivers, loan or other documents or amendments to any documents, and any or all other instruments of satisfaction or cancellation or of partial or full release or discharge, or of subordination or modification, and all other comparable instruments, including, without limitation, the recording or filing with the appropriate public officials such documents or instruments and the endorsement or deposit of any instrument or monies in connection with the liquidation, foreclosure, collection, settlement, modification, forbearance or sale of such loan or lien, whether or not in bankruptcy.

This appointment is to be construed and interpreted as a limited power of attorney. The enumeration of specific items, rights, acts or powers herein is not intended to, nor does it give rise to, and it is not to be construed as a general power of attorney.

This limited power of attorney is not intended to extend the powers granted to the Green Tree under the Agreement or to allow the Green Tree to take any action with respect to the Accounts not authorized by the Agreement.

IN WITNESS WHEREOF, Servicer has caused to be signed by a duly authorized officer, this Special and Limited Power of Attorney effective as of the date set forth above.

COUNTRYWIDE HOME LOANS, INC.

By: _____
Name: Elizabeth Chen
Title: SVP

Witness: _____
Name: Joseph Yandell
Title: VP

Witness: _____
Name:
Title:

STATE OF California          §
                            §
COUNTY OF Los Angeles        §

Before me, a Notary Public in and for the State of California, on this day personally appeared Elizabeth Chen, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she is the SVP of Countrywide Home Loans, Inc. and that he executed the foregoing document in such capacity and with full authority in the premises.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 30th day of July, 2009. 2010

GLENDA J. DANIEL
COMM. # 1892235
NOTARY PUBLIC · CALIFORNIA
LOS ANGELES COUNTY
My Commission Expires
June 11, 2014

_____
Notary Public in and for the State of California